IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08 C 02180 |
| CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a/k/a CLEAN HARBORS, INC., a Massachusetts corporation, | ) ) ) ) | Judge John W. Darrah |
| Defendant. | ) ) | |

## PEIC'S RESPONSE TO CLEAN HARBORS' RULE 12(B)(7) MOTION TO DISMISS

Now comes the Plaintiff, Pacific Employers Insurance Company ("PEIC"), and in opposition to the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) filed by Defendant Clean Harbors Environmental Services, Inc. ("Clean Harbors"), states as follows:

### I.     INTRODUCTION

It is now apparent that Clean Harbors will go to any length to try to improperly deprive PEIC of its right to prosecute this insurance coverage declaratory judgment action. Indeed, Clean Harbors' Rule 12(b)(7) Motion to Dismiss is the latest in a series of frivolous attempts by Clean Harbors to wrest jurisdiction from this Court. Clean Harbors' initial salvo was its motion seeking to have this matter reassigned to Judge Holderman. Not satisfied that this approach will be successful, Clean Harbors felt it necessary to then seek leave to file a nearly identical third-party coverage action against PEIC in the underlying personal injury case brought by Eddie and Sandy Lopez, ignoring the fact that PEIC's coverage action was first-filed.[1]

---

[1] PEIC has opposed both of Clean Harbors' Motions, which are currently under consideration by Judge Holderman.

Clean Harbors incredibly now seeks the outright dismissal of this case pursuant to Rule 12(b)(7), arguing that underlying Plaintiffs Eddie and Sandy Lopez are necessary parties to PEIC's coverage action. Clean Harbors' Rule 12(b)(7) Motion is the most outrageous of the trio of unsupported jurisdictional posturing motions filed by Clean Harbors to date. Not only has Clean Harbors failed to provide any support for the proposition that Mr. and Mrs. Lopez are necessary and indispensable parties to PEIC's coverage action, Clean Harbors has not shown that Mr. and Mrs. Lopez could not be readily joined in the PEIC coverage action. Outright dismissal of a lawsuit for failure to join a necessary party is not a remedy allowed for under Rule 12(b)(7), if that particular absent party can be joined. Here, Mr. and Mrs. Lopez can certainly be joined in this lawsuit if the Court deems it necessary.

Enough is enough. Clean Harbors' improper attempts to deprive PEIC the right to prosecute its insurance coverage action before this Court should end here.

## II.    ARGUMENT

Clean Harbors' sole basis for dismissal under Rule 12(b)(7) is that PEIC's Complaint is "fatally defective" because it failed to name underlying Plaintiffs Eddie and Sandy Lopez as defendants. *See Clean Harbors' Motion at ¶ 4.* Clean Harbors' argument in this regard is wrong on so many levels that one could question whether Clean Harbors read Rule 12(b)(7) or Fed.R.Civ.P 19, which addresses the required joinder of parties, prior to filing its Motion.

As an initial matter, a motion to dismiss for failure to join an indispensable party must allege that (1) the absent party is necessary to the lawsuit, (2) the absent party cannot be joined, and (3) the absent party is indispensable to the resolution of the lawsuit. FRCP 19(a)-(b); Pit River Home & Agic. Coop v. U.S., 30 F.3d 1088, 1099 (9th Cir. 1994). In its Motion, however, Clean Harbors only addresses the "necessary" element, and ignores the issue of whether Mr. and Mrs. Lopez could be joined in the PEIC lawsuit, or whether they are indispensable parties. *See Clean Harbors' Motion at ¶ 4.* Clean Harbors has not come close to satisfying the elements necessary to prevail on a Rule 12(b)(7) Motion, and therefore its motion should be denied.

**A.    Standard of Review.**

In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept as true the allegations of the complaint. <u>Davis Cos. v. Emerald Casino, Inc.,</u> 268 F.3d 477, 479 n.2 (7th Cir. 2001).  The moving defendant has the burden of showing that a party must be joined for just adjudication.  <u>Ploog v. HomeSide Lending, Inc.,</u> 209 F.Supp.2d 863, 873 (N.D.Ill.2002) ("The proponent of a Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest and that the protection of that interest will be impaired or impeded by the absence.").

Dismissal under Rule 12(b)(7) requires a two-step inquiry.  First, Rule 19(a) is applied to determine whether the absent party is conditionally necessary and therefore to be joined if feasible. <u>City of Littleton v. Commercial Union Assurance Cos.,</u> 133 F.R.D. 159, 162 (D.Colo.1990).  In making this determination, three factors are considered: (1) whether complete relief can be accorded among the parties already in the case without joinder; (2) whether the absent entity's ability to protect its own interest will be impaired; and (3) whether any existing parties might be subject to risk of multiple or inconsistent obligations.  Fed.R.Civ.P. 19(a)(1). Second, when a court decides a party is necessary but cannot be joined, the court must then determine whether the party is indispensable to the action. Fed.R.Civ.P. 19(a, b).

Determinations as to necessity and indispensability under Rule 19 are not mechanical and "the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar."  <u>Schlumberger Indus. Inc. v.. Nat'l Sur. Corp.,</u> 36 F.3d 1274, 1286 (4th Cir.1994) (citing <u>Provident Tradesmens Bank & Trust Co. v. Patterson,</u> 390 U.S. 102 (1968)). When considering whether a necessary party is indispensable, a court considers (1) the extent to which a judgment rendered in the absence of a necessary party might be prejudicial to that person or to those already parties; (2) the extent to which the prejudice can be lessened or avoided by shaping the judgment; (3) whether judgment rendered in the necessary person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if

the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b).  Selective Insurance Company of S.C. v. City of Paris, 2008 WL 927956 (C.D.Ill. March 17, 2008).

### B.    Mr. and Mrs. Lopez are not Necessary Parties to the PEIC Lawsuit.

In its Motion, Clean Harbors makes the overly conclusory argument that Mr. and Mrs. Lopez are "necessary" parties to the PEIC lawsuit.  Clean Harbors offers no evidence, and makes no argument, as to why Mr. and Mrs. Lopez are "necessary" parties.  Clean Harbors offers nothing in terms of (1) whether complete relief can be accorded among it and PEIC without joinder of Mr. and Mrs. Lopez; (2) whether the Lopez' ability to protect their own interest will be impaired; and (3) whether it and PEIC might be subject to risk of multiple or inconsistent obligations.  Fed.R.Civ.P. 19(a)(1).

Under its Rule 12(b)(7) Motion to Dismiss, Clean Harbors has the burden of producing evidence which shows the nature of the absent party's interest and that the protection of that interest will be impaired or impeded by the absence.  *See* Ploog, 209 F.Supp.2d at 873.  Clean Harbors has not provided any evidence to demonstrate that the Lopez' interest would be impaired by their absence from this lawsuit.  Therefore, Clean Harbors has not satisfied the obligation it is burdened with under Rule 12(b)(7).

Instead, Clean Harbors cites a single case, St. Paul Fire & Marine Insurance Company v. T.J. Lambrecht Construction, Inc., 2001 WL 1609374 at *2 (N.D.Ill. 2001), for the proposition that "an injured party is necessary to the proper adjudication of the declaratory judgment." *See Clean Harbors' Motion at ¶ 4.*  In St. Paul Fire, the court noted that when a coverage action is instituted not by the insured but by the insurer, an absent injured party runs the risk being bound to a default judgment of noncoverage if the named defendants do not actively pursue their defense and therefore may be a necessary to the proper adjudication of the declaratory judgment.

That ruling, however, was based on the facts specific to that case, and rested on the concept that the named insured might not look out for the injured party's interest.  Here, the situation is different.  Mr. and Mr. Lopez' interest is sufficiently protected by Clean Harbors.

Indeed, Lopez' attorney said in open Court on May 13, 2008 that he is satisfied that Clean Harbors will protect the Lopez' interests with respect to any coverage dispute with PEIC.

> **Mr. Rouleau**: In the insurance action, we may be a necessary party if our rights are not being adequately protected by Clean Harbors. We believe that they are, though. I mean we are satisfied that even if there was no insurance, there's going to be adequate funding for whatever judgment.

*See Hearing Transcript at p. 15, attached as Exhibit A.* Here, the fact that the PEIC coverage action is brought by the insurer and not the insured has no bearing on a Rule 19 analysis because of Lopez' attorney's representation to the Court that the Lopez' interests are protected in the PEIC coverage action even without being named parties.

**C.    Mr. and Mrs. Lopez could be Joined in the PEIC Lawsuit and Therefore Dismissal is Not Appropriate Under Rule 12(B)(7).**

Even if the Court finds that Mr. and Mrs. Lopez are necessary parties, dismissal of the PEIC suit is not a remedy provided for under Rule 12(b)(7) because they can be joined in this suit. Mr. and Mrs. Lopez are Illinois residents who have submitted themselves to the jurisdiction of this Court. *See Clean Harbors' Notice of Removal and Lopez' Amended Complaint attached as Exhibits B and C.* As PEIC is a resident of Pennsylvania, and Mr. and Mrs. Lopez are residents of Illinois, joinder of them would not defeat subject matter jurisdiction based on diversity.

As an initial matter, Clean Harbors has not even argued that joinder of Mr. and Mrs. Lopez is impracticable in this suit. If such an argument is not made, an essential prerequisite for dismissal under 12(b)(7) is therefore lacking and the Motion must be denied. Central States, Southeast and Southwest Areas Pension Fund v. S & H Trucking, Inc., 2008 WL 161479 * 3 (N.D.Ill. Jan. 16, 2008).

Even if Clean Harbors had made this argument, its Motion to Dismiss would still fail. Rule 19(a) does not require dismissal of a suit for failure to join a necessary party. Instead, if the elements set forth in the rule are met, the court is required to order joinder of the necessary party,

not dismissal of the action.    Alexian Brothers Medical Center v. Will County Local 174 Carpenters Welfare Fund, 1992 WL 22698 (N.D.Ill. Feb. 5. 1992).   Under Rule 12(b)(7), a dismissal with prejudice should ordinarily result only after the court has ordered the party joined and the plaintiff has failed to do so.   Sladek v. Bell System Management Pension Plan, 889 F.2d 972 (7th Cir. 1989).  If the court determines that a party is necessary to the litigation, the court must order the party joined.  Id.

If all the above is not enough to demonstrate that Clean Harbors' Rule 12(b)(7) Motion is completely meritless, the Court only needs to review the St. Paul Fire case – the only case cited in Clean Harbors' Motion in support of its dismissal argument.  In St. Paul Fire, the defendant filed a Rule 12(b)(7) Motion to Dismiss based on plaintiff's failure to name the injured party in a coverage action.  The court denied the defendant's Rule 12(b)(7) Motion, and instead ordered the joiner of the injured party.  Why Clean Harbors relies on a case that contradicts the very relief sought by Clean Harbors in its Motion is puzzling.  Perhaps it is because there simply is no legal support for Clean Harbors' Rule 12(b)(7) Motion to Dismiss under the present factual scenario.

### D.    Mr. and Mrs. Lopez are Not Indispensable Parties.

The fact that Mr. and Mrs. Lopez can be joined in the PEIC suit, if the Court so determines, by itself defeats Clean Harbors' Rule 12(b)(7) Motion to Dismiss.   While the analysis can end here, it is also evident that Mr. and Mrs. Lopez are not indispensable parties to the PEIC lawsuit.   Indeed, Clean Harbors does not even make the argument that they are indispensable, clearly ignoring its burden to do so under the Rule.

If Clean Harbors had made an argument that Mr. and Mrs. Lopez were indispensable to PEIC's coverage action, this argument would fail.  Indeed, under Rule 19, injured parties, like Mr. and Mrs. Lopez, are not indispensable parties to coverage actions.  "[I]t is unlikely that an injured party would be declared an indispensable party under Rule 19(a) today."  Sliwa v. Hunt, 1992 WL 346425 (N.D.Ill. Nov. 18, 1992).

Rule 19(b) sets forth four factors to consider in deciding whether an absent party is "indispensable": (1) the extent to which a judgment entered without the absent party might be prejudicial to him or those already parties; (2) the extent to which protective measures might be employed to lessen or avoid the prejudice; (3) whether a judgment rendered in the absence of the party will be adequate; and, (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b).

Here, there would be no prejudice to Mr. and Mrs. Lopez (or to Clean Harbors) if they were not joined in the PEIC lawsuit. As indicated earlier, Lopez' counsel has stated that his clients' interests would be protected by Clean Harbors in relation to PEIC's coverage action. Additionally, if the Court wished to avoid any prejudice that might be present form the exclusion of Mr. and Mrs. Lopez from the PEIC lawsuit, it could simply order their joinder pursuant to Rule 19. Finally, a coverage declaration by this Court of PEIC's and Clean Harbors' rights and obligations under the applicable policy of insurance can be made without the presence of Mr. and Mrs. Lopez. This coverage lawsuit involves an insurance contract between PEIC and Clean Harbors; a contract to which Mr. and Mrs. Lopez are not parties. In order to make its ruling regarding coverage, this Court need simply to look at the facts of the underlying claim (which can be presented without Mr. and Mrs. Lopez being parties) and determine whether the claim falls within the coverage of the PEIC policy. Such a determination can certainly made without Mr. and Mrs. Lopez being parties, as they have no rights or obligations under the PEIC policy.

Federal courts in this district do not consider injured parties indispensable to coverage actions. Indeed, Mr. and Mrs. Lopez cannot be indispensable parties if their joinder can simply be ordered by the Court; something the Court can do here if it so chooses given that they are residents of Illinois and have availed themselves of the jurisdiction of this court by prosecuting their underlying personal injury action in this district.

### III.  CONCLUSION

For the reasons set forth above, Clean Harbors' Motion to Dismiss must be denied.


Dated June 6, 2008                                    Respectfully submitted,


                                                      /s/ Matthew T. Walsh
                                                      mwalsh@cozen.com
                                                      COZEN O'CONNOR
                                                      222 South Riverside Plaza, Suite 1500
                                                      Chicago, IL  60606
                                                      (312) 382-3108
                                                      (312) 382-8910 (Facsimile)

                                                      - and –

                                                      Thomas M. Jones
                                                      tjones@cozen.com
                                                      Helen A. Boyer
                                                      hboyer@cozen.com
                                                      COZEN O'CONNOR
                                                      1201 Third Avenue, Suite 5200
                                                      Seattle, WA 98101
                                                      (206) 340-1000
                                                      (206) 621-8783 (Facsimile)
                                                      ATTORNEYS FOR PLAINTIFF, PACIFIC
                                                      EMPLOYERS INSURANCE COMPANY


### CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing PACIFIC EMPLOYERS INSURANCE COMPANY'S RESPONSE TO CLEAN HARBORS' MOTION TO DISMISS was filed electronically on June 6, 2008, and is available for viewing and downloading from the ECF system.

                                                      /s/ Matthew T. Walsh
                                                      mwalsh@cozen.com
                                                      COZEN O'CONNOR
                                                      222 South Riverside Plaza, Suite 1500
                                                      Chicago, IL  60606
                                                      (312) 382-3108
                                                      (312) 382-8910 (Facsimile)

CHICAGO\629172\3 216939.000

# EXHIBIT A

1

1        UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3   EDDIE LOPEZ and SANDY LOPEZ,        )

4              Plaintiffs,              )

5        vs.                            )   No. 05 C 3645

6   CLEAN HARBORS ENVIRONMENTAL         )
    SERVICES, INC., also known as       )
7   Clean Harbors, Inc.,                )   Chicago, Illinois
                                        )   May 13, 2008
8              Defendant.               )   9:00 o'clock a.m.

9              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JAMES F. HOLDERMAN
10

11  APPEARANCES:

12  For the Plaintiffs:        LAW OFFICE OF MARK ROULEAU
                               BY:  MR. MARK A. ROULEAU
13                             5301 East State Street
                               Suite 215D
14                             Rockford, Illinois   61108
                               (815) 229-7246
15
                               STEVEN J. MORTON & ASSOCIATES, LTD.
16                             BY:  MR. STEVEN J. MORTON
                               10 South LaSalle Street
17                             Suite 3310
                               Chicago, Illinois   60603
18                             (312) 372-4448

19  For the Defendant:         MYERS, MILLER & KRAUSKOPF
                               BY:  MR. JASON M. SAX
20                             30 North LaSalle Street
                               Suite 2200
21                             Chicago, Illinois   60602
                               (312) 345-7250
22

23

24

25

2

1    APPEARANCES (Continued):

2

3    For Defendant:                SHEFSKY & FROELICH, LTD.
                                    BY:  MR. JOHN F. KENNEDY
4                                        MR. CARY E. DONHAM
                                         MR. JACK J. HAGERTY
5                                   111 East Wacker Drive
                                    Suite 2800
6                                   Chicago, Illinois  60601
                                    (312) 527-4000
7

      For Pacific Employers         COZEN, O'CONNOR, P.C.
8     Insurance Company:            BY:  MR. BRUCE M. LICHTCSIEN
                                         MR. MATTHEW WALSH
9                                   222 South Riverside Plaza
                                    Suite 1500
10                                  Chicago, Illinois  60606-6000
                                    (312) 382-3153
11

      Also Present:                 Mr. Eddie and Ms. Sandy Lopez,
12                                  Plaintiffs

13

14

15

16

17

18

19

20

21

22

23                    COLLEEN M. CONWAY, CSR, CRR
                          Official Court Reporter
24             219 South Dearborn Street, Room 2524-A
                      Chicago, Illinois  60604
25                          (312) 435-5594
                  colleen_conway@ilnd.uscourts.gov

3

1      (Proceedings in open court.)

2          THE CLERK:  05 C 3645, Lopez versus Clean Harbors,

3   status and motion for reassignment, motion for leave to file,

4   and motion to amend.

5          MR. ROULEAU:  Good morning, Your Honor.

6          Mark Rouleau on behalf of the plaintiffs, accompanied

7   by Steve Morton.

8          And Mr. and Mrs. Lopez are here because they were

9   concerned about the progress of --

10         THE COURT:  Okay.  Good morning --

11         MR. ROULEAU:  After they had gotten --

12         MR. LOPEZ:  Good morning.

13         THE COURT:  -- Mr. Lopez.  Mrs. Lopez, good morning.

14         MS. LOPEZ:  Good morning.

15         MR. KENNEDY:  Good morning, Your Honor.

16         John Kennedy with Cary Donham and Jack Hagerty from

17   Shefsky & Froelich on behalf of Clean Harbors.

18         MR. LICHTCSIEN:  Good morning, Your Honor.

19         My name is Bruce Lichtcsien on behalf of Pacific

20   Insurance.

21         THE COURT:  Good morning.

22         MR. WALSH:  Matt Walsh, the same.

23         MR. SAX:  Good morning, Your Honor.

24         Jason Sax for Clean Harbors.

25         MR. KENNEDY:  And, Judge, just as a technical matter,

**4**

1    Mr. Hagerty does not technically have an appearance on file.

2    We anticipate him having an appearance on file shortly.  But he

3    is here to assist and answer any questions the Court may have

4    regarding any substantive coverage issues in the event that

5    comes up.

6           THE COURT:  All right.  And, Mr. Hagerty, your

7    position is what?

8           MR. HAGERTY:  Pardon me, Your Honor?

9           THE COURT:  Your position?

10          MR. HAGERTY:  Counsel for Clean Harbors with respect

11   to the coverage case, if that proceeds before Your Honor.

12          THE COURT:  All right.  So you are inside counsel?

13          MR. HAGERTY:  I'm with Shefsky & Froelich here as

14   well, Your Honor.

15          THE COURT:  Okay.  All right.  Okay.  Well, we have

16   several things up.

17          First of all, let me address Mr. and Mrs. Lopez.

18   Your lawyer has said you're concerned about the progress of the

19   case.

20          We had this case set for trial, and we would have

21   gone to trial but for certain difficulties that arose in

22   connection with the litigation, and so I am trying to move your

23   case along as much as I possibly can to get a resolution for

24   you.  But I will answer any questions that you desire to ask.

25          MR. LOPEZ:  You know, I know it's due process --

5

1        THE COURT:  I am sorry?

2        MR. LOPEZ:  I know it's due process, you know.  I

3    feel that -- Steve and Mark have told me that they thought you

4    had said it was in our best interests to hold it off for a

5    while or they felt it was in our best interests.

6        THE COURT:  Well, they -- what has happened recently

7    is there has been some insurance issues that have arisen that

8    need to be sorted out.  That's why we need to hold off until we

9    can sort these out.

10        We now have further folks who have not previously

11    appeared, and Mr. Kennedy on behalf of Clean Harbors has come

12    into the case and examined it and found that there are certain

13    issues that need to be addressed, that should be resolved

14    before we proceed further to see where there is or is not

15    insurance coverage.

16        So that's what we're really working on at this point.

17    But I now have the case set for trial, and we are going to go

18    to trial on that day.

19        MS. LOPEZ:  Okay.

20        THE COURT:  Okay?

21        MR. ROULEAU:  Your Honor, there's one housekeeping

22    matter, and I --

23        THE COURT:  Well, wait, wait.

24        MR. ROULEAU:  -- thank you for --

25        THE COURT:  Any other questions, Mrs. Lopez?

6

1       MS. LOPEZ:  No.  Thank you.

2       THE COURT:  Okay.  Well, I appreciate your coming in.

3   This is the courtroom your case will be tried in.  I am the

4   judge that will preside over your case.  We have now met one

5   another.  You now have a better understanding of the

6   environment that you will be in in connection with the trial of

7   the case.

8       So I hope we can proceed to get this resolved.  There

9   is always the possibility of resolving the case before trial as

10  well, and I would encourage you to evaluate all of those

11  options, too, because going to trial with a jury in that jury

12  box over there is always a risky proposition.  You can't always

13  tell what a jury is going to do with a case.  And so a lot of

14  times, it is in people's best interests to resolve the case

15  short of trial, but that is entirely your decision along with

16  the decision of the folks on the other side of the case.

17      MS. LOPEZ:  Okay.

18      THE COURT:  Go ahead.

19      MR. ROULEAU:  Yes.  Thank you very much, Judge, for

20  that.  I appreciate your taking the time with my clients.

21      I have noticed, as a housekeeping matter, that the

22  defendant has never filed an FRCP 7.1 statement on corporate

23  interests, which I think is important, especially -- as long as

24  we're trying to set the record accurate.

25      THE COURT:  Okay.  Well, yes, and I guess, to some

7

1    extent, because of the Clean Harbors Environmental Services

2    motion for leave to amend its answer and affirmative defenses,

3    perhaps that would be helpful.

4            Mr. Kennedy --

5            MR. KENNEDY:  That would be fine, Judge.

6            THE COURT:  -- can you get that accomplished?

7            MR. KENNEDY:  We can, Judge.

8            THE COURT:  Okay.  All right.  Well, we might as well

9    go ahead and address that particular motion first.

10           How much time is desired to respond to that, if any?

11           MR. ROULEAU:  Well, you don't --

12           MR. KENNEDY:  Judge, if I may, you had -- in your

13   previous minute order, you had preset a briefing schedule --

14           THE COURT:  It was set?

15           MR. KENNEDY:  -- last time --

16           MR. ROULEAU:  Yes.

17           MR. KENNEDY:  -- we were before you.

18           THE COURT:  We have some dates set on that.

19           MR. KENNEDY:  We do, right.

20           THE COURT:  Thank you.  All right.  Moving to the

21   next item, it would be this question of reassignment based on

22   relatedness.

23           We have the folks from Pacific Employers Insurance

24   here.  Maybe we can work that out today.

25           MR. KENNEDY:  Judge, this is Clean Harbors' motion,

**8**

1  and we have also filed, Your Honor, a motion for leave to file

2  a third-party complaint which also -- in this case which also

3  names Pacific, an affiliate of Pacific called ESIS, E-S-I-S,

4  and the excess carrier, National Union.

5  I believe, Judge --

6  (Counsel conferring.)

7  MR. KENNEDY:  And it also identifies as a necessary

8  party Mr. and Mrs. Lopez, the plaintiffs in this case.

9  We believe that resolution of either one of those

10  motions gets us to the same place, Your Honor, and it's a

11  question of sequencing.

12  If you grant the motion for leave to file the

13  third-party complaint, and we think that Clean Harbors has

14  satisfied all the elements before you to do that, the motion

15  for relatedness essentially becomes mooted out.

16  There is a -- the complaint before Judge Darrah that

17  Pacific filed is very limited.  It doesn't include the -- all

18  the parties that should have been brought related to Pacific.

19  The Clean Harbors complaint is much more comprehensive, and it

20  addresses not only Pacific's coverage issues, but also ESIS's

21  coverage issues and National Union's coverage issues.

22  And, in addition, Pacific's complaint is infirm

23  because they fail as the insurer to name the Lopezes as

24  necessary parties.

25  The motion for relatedness, we believe -- well, we

**9**

1    have satisfied the elements of Local Rule 40.4 as well, and the

2    bottom line in this case, Judge, is there's no judge in this

3    building more familiar with the issues in this case than Your

4    Honor, and all of the elements of the local rules get to that

5    rationale in conserving judicial resources.  It doesn't make

6    any sense for Judge Darrah to reinvent the wheel on the

7    complicated issues that are in this case while Your Honor also

8    has it.

9         And so we believe that under -- both motions should

10    be granted.  It gets us to the same place, and the Clean

11    Harbors third-party action actually serves the interests better

12    because it's more comprehensive.

13         THE COURT:  All right.  Well, that addresses Pacific

14    Employers' concern.  Opposing counsel wants your motion to be

15    granted.

16         MR. LICHTCSIEN:  My motion?

17         THE COURT:  Yes.

18         MR. LICHTCSIEN:  No, this is not our motion, Judge.

19    Pacific Employers did not file this motion, and Pacific --

20         THE COURT:  I am sorry.  Clean Harbors' motion as

21    filed.

22         MR. LICHTCSIEN:  This is Clean Harbors' motion to

23    reassign the declaratory judgment action that Pacific Employers

24    already filed before Judge Darrah.  That declaratory judgment

25    action was the first filed declaratory judgment action in this

**10**

1    court.

2         Pacific Employers objects to the motion for

3    reassignment as well as the motion to file a third-party

4    complaint, to the extent that we can, because, basically, what

5    we feel, respectfully, Your Honor, is that this is an end-run

6    attempt to try to avoid the first filing of the declaratory

7    judgment that my clients filed, which is now pending before

8    Judge Darrah, in an attempt to move that case and reassign that

9    case before Your Honor.

10         THE COURT:  And what's wrong with that?  That's the

11    question I have.  What's wrong with that?

12         MR. LICHTCSIEN:  Judge, with all due respect to your

13    knowledge of the underlying case, the Clean Harbors personal

14    injury case, there are no grounds here to reassign the

15    declaratory judgment action to this courtroom.

16         There are standards set forth in Local Rule 40.4 that

17    require a saving of judicial time and effort, the rule requires

18    that there be no delay, and the rule also requires that the two

19    cases, if they are reassigned, be accessible of disposition

20    before one Court.

21         I'd like to just point out, Judge, that, as the

22    Lopezes indicated, I'd like to emphasize that they're ready to

23    go to trial.  That personal injury case is basically set to go

24    to trial.  We just --

25         THE COURT:  It's not basically set.

**11**

1       MR. LICHTCSIEN:  It is.

2       THE COURT:  It is set.

3       MR. LICHTCSIEN:  It is set.

4       THE COURT:  Yes, we are ready to go.

5       MR. LICHTCSIEN:  They're ready to go.

6       THE COURT:  Right.  We're going to go in December.

7       MR. LICHTCSIEN:  We just filed the declaratory

8   judgment action.  It's in its infancy.  Clean Harbors --

9       THE COURT:  You want to slow it down?

10      MR. LICHTCSIEN:  We don't want to slow it down.  We

11  want to do it in a separate courtroom, Judge.  We don't want to

12  slow the Lopez case.

13      THE COURT:  Well, let me just ask, does it involve

14  the same property?

15      MR. LICHTCSIEN:  It doesn't.

16      THE COURT:  Mr. Kennedy?

17      MR. KENNEDY:  It does, Judge.  It involves the same

18  property, the same occurrence that's taking place that

19  satisfies that element of --

20      MR. LICHTCSIEN:  And --

21      MR. KENNEDY:  -- 40.4(a), Your Honor.

22      MR. LICHTCSIEN:  I'm sorry, Your Honor.

23      It involves the same occurrence, but the issues are

24  entirely different.  There's a declaratory judgment and then

25  there's an underlying personal injury case.

Colleen M. Conway, Official Court Reporter

**12**

1    THE COURT: But don't we have to look into the

2    underlying personal injury case to resolve the declaratory

3    judgment?

4    MR. LICHTCSIEN: To a certain extent, certainly you

5    do to understand the factual issues that will decide the

6    coverage action.

7    THE COURT: Because the cases do involve some of the

8    same issues of fact and law, right?

9    MR. LICHTCSIEN: To some small degree. I would

10   disagree that they involve the same questions of law.

11   THE COURT: And point number 3, that the cases grew

12   out of the same transaction or occurrence?

13   MR. LICHTCSIEN: That's true, Your Honor.

14   THE COURT: Yes. And then the question, then, is

15   judicial economy, and that's what Mr. Kennedy was addressing

16   earlier; that, frankly, I have been living with this case long

17   enough, and now with the new information that's come up that's

18   caused us to evaluate these issues, I am even more apprised.

19   MR. LICHTCSIEN: Well, Judge, to the extent that

20   there's a difference of opinion on this, we would request leave

21   to file a response brief, and we have --

22   THE COURT: Okay.

23   MR. LICHTCSIEN: We have indicated to opposing

24   counsel, we have suggested a 14 and 7 briefing schedule, but --

25   THE COURT: Okay.

**13**

1          MR. LICHTCSIEN:  -- we haven't heard anything back

2     from them, so --

3          THE COURT:  All right.  Any objection to 14 days from

4     today?

5          MR. KENNEDY:  We -- on behalf of Clean Harbors,

6     Judge, we think you can rule on the papers.  The elements are

7     of the record.  You've gone through the litany under 40.4(a),

8     and Clean Harbors has satisfied those elements, in our opinion.

9          And then when you go to 40.4(b), the elements of both

10    cases are pending in the same court, we satisfy that.  That's

11    of record.

12         The handling of both cases by the same judge is

13    likely to result in substantial savings or judicial time and

14    effort.  We've satisfied that effort, that element.

15         And the earlier case has not progressed to the point

16    where designated later-filed cases related would likely delay

17    the proceedings.  It's not going to delay these proceedings.

18    This trial is set for December 8.  We have six months to engage

19    in substantial prosecution of this dec. action or third-party

20    action and, to the extent the Pacific case survives, that

21    action.  So we can narrow those issues.

22         And can the case be susceptible of disposition?  It

23    doesn't mean it must be disposed of in the same case, Judge.

24    The question is can it be, and this case can be.  It's like the

25    statute of frauds.  Can the agreement be performed within a

**14**

1    year? If it can be, it satisfies the element. Here, this case

2    can be susceptible of disposition.

3            And so, Judge, as the Seventh Circuit advises, you

4    have broad discretion to rule on this motion, and we think you

5    ought to exercise your discretion.

6            This is not a close call. Briefing is not going to

7    further inform those elements, in our opinion, Judge.

8            MR. ROULEAU: Your Honor, may I be heard?

9            THE COURT: You may.

10           MR. ROULEAU: The plaintiffs have no opposition to

11   bringing that other case into this one as long as it's not

12   going to slow down the progress of our case or reopen discovery

13   in this case that's been closed. Absent that, you know, they

14   can fight it out amongst themselves. That's our position.

15           As far as the issue of being a necessary --

16           THE COURT: Would you be amenable to providing the

17   folks from Pacific Employers and anyone else who's brought in

18   as a third-party defendant by Clean Harbors, providing all that

19   discovery to them?

20           MR. ROULEAU: You mean what's already been done?

21           THE COURT: What's already been done.

22           MR. ROULEAU: Yeah, yes, yes, Judge. I mean, the

23   reams of volumes --

24           THE COURT: And you agree, Mr. Kennedy?

25           MR. ROULEAU: -- they have it all as well, so --

**15**

1    MR. KENNEDY: We would, Judge. And we've already

2    provided substantial information.

3    MR. ROULEAU: The other point, though, Judge, is

4    under federal case law, we are not necessary parties to the

5    third-party action, and that's straight out of the Northern

6    District here, *Winklevoss Consultants/Federal Insurance*, 174

7    F.R.D. 416, and it cites to *Krueger versus Cartwright*. There's

8    several other cases that -- but federal court, necessary

9    parties are different from under state law.

10        In the insurance action, we may be a necessary party

11   if our rights are not being adequately protected by Clean

12   Harbors. We believe that they are, though.

13        I mean, we're satisfied that even if there was no

14   insurance, there's going to be adequate funding for whatever

15   judgment, if any, comes down.

16        THE COURT: Okay. All right. Well, it seems to me

17   that perhaps we should allow Pacific Employers to make some

18   further filing, if they desire. So 14 days would be the 27th

19   of May. One week for a reply would be June 3rd.

20        And will that be with regard to not only the motion

21   on relatedness, but also the third-party action?

22        MR. LICHTCSIEN: Yes.

23        THE COURT: Because it seems to me that if we bring

24   the third-party action, that it's duplicative of the action in

25   front of Judge Darrah.

**16**

1      MR. LICHTCSIEN:  I agree, Judge.  We can address both

2   issues.

3      THE COURT:  Okay.

4      MR. ROULEAU:  Judge, I don't think it is, though.

5   The third-party action is actually suing quite a few other

6   insurers that are not part of the action before Judge Darrah.

7      THE COURT:  Well, as to Pacific Employers.

8      MR. ROULEAU:  Yes, yes, sir, correct.

9      THE COURT:  Yes.  Are any of those insurers here?

10   All right.

11      MR. HAGERTY:  I have heard from both, with at least

12   one of the other sets of carriers, Your Honor, and they just

13   wanted hear to what happened this morning, just wanted to be

14   apprised of whatever the Court might rule.

15      THE COURT:  Okay.  All right.  I will allow that

16   briefing schedule.  I will rule as promptly as possible in

17   connection with that.

18      How are we doing on the other analysis that is taking

19   place?  I see there was some comment about the jurisdictional

20   question.

21      MR. KENNEDY:  Yes, Judge.  With respect to the motion

22   for leave to amend the answer and affirmative defense, our

23   factual analysis shows that Clean Harbors Services is the

24   entity that owns, operates, and controls the Chicago facility,

25   and that CHEZI's admission of that paragraph throughout the

**17**

1    complaint should be changed to a denial.

2           We also have looked at, as we discussed last time,

3    Your Honor, pursuant to your order, what impact adding Clean

4    Harbors Services to the case would have on this Court's subject

5    matter jurisdiction under the nerve center test of the Seventh

6    Circuit, and we've laid out the facts that we believe are

7    relevant, Judge.

8           The operations of the Chicago facility are almost

9    exclusively here in Illinois.  The corporate governance and

10   decision-makers are in Massachusetts.  And I believe under the

11   nerve center test, although we didn't say it in our papers, I

12   believe that under the nerve center test, subject matter

13   jurisdiction would still lie here with Your Honor.

14          I don't think that Clean Harbors Services would

15   establish citizenship under Illinois -- in Illinois under the

16   nerve center test.

17          THE COURT:  All right.  Let me just nail down this

18   particular point.  Mr. and Mrs. Lopez, the plaintiffs in the

19   case, are citizens of the State of Illinois?

20          MR. ROULEAU:  Yes, Judge.

21          THE COURT:  Okay.  All right.  Is there any objection

22   to this --

23          MR. ROULEAU:  Yeah, that's what we talked about

24   initially.  There's a briefing schedule in the --

25          THE COURT:  You have a briefing schedule.

**18.**

1     MR. ROULEAU: And essentially what they're trying to

2     do, Judge, is they're setting up essentially a defense that

3     they had already admitted, and they're going to try -- my

4     suspicion is they're going to raise a statute of limitations

5     if the new party gets brought in.

6          I mean, what we end up having is essentially an

7     argument for relation back and whether or not --

8          THE COURT: Right.

9          MR. ROULEAU: -- it can relate back. But since 2003,

10    in all of the pleadings, they've admitted that they owned,

11    operated, and controlled.

12         We've also got numerous other documents that show

13    that Clean Harbors Environmental Services is operating from

14    that location, so -- that's why we've got the briefing

15    schedule.

16         THE COURT: Okay. I guess my question was: Do we

17    really need the briefing schedule?

18         MR. ROULEAU: Well, yeah, I guess not if it was

19    solely for the purpose of whether or not they're being allowed

20    to amend because of the subject matter. That's why you

21    originally entertained it. That's what your docket entry says.

22         THE COURT: Right.

23         MR. ROULEAU: Essentially discovery has been closed.

24    We've had five or more years of litigation, going back to the

25    original complaint that was non-suited, in which in their

**19**

1  answers to interrogatories, admissions repeatedly that they

2  own, operate, and control the operations there.

3      THE COURT:  All right.  Well, let me ask counsel for

4  Clean Harbors, are you intending to assert a statute of

5  limitations question with regard to the plaintiffs' complaint?

6      MR. KENNEDY:  Judge, I've looked at that issue, and

7  I've come to some conclusions about whether or not relation

8  back applies.

9      I don't think, Your Honor, I can go of record without

10  coordinating with the carriers with respect to Clean Harbors'

11  position on that point.  So I can't -- because of the duties to

12  cooperate with the insurance carriers, I don't believe I can go

13  of record with our view of that point.

14      But may I add one more thing, Your Honor?

15      THE COURT:  All right.

16      MR. KENNEDY:  I put in our papers that Clean Harbors

17  Environmental Services, Inc. is the employer of the employees

18  that work at the Chicago facility, so what you have, Judge, is

19  kind of a mixed bag.  You have Clean Harbors Services as the

20  permitted authority by the IEPA, so they're legally recognized

21  by the environmental authorities as the operating entity.  They

22  have the leasehold interest, so they are the owner of the

23  leasehold interest.

24      The operation, because Clean Harbors Services can

25  only function through people, those people are employed by

**20**

1    Clean Harbors Environmental Services, Inc.

2         So with the way this allegation is drafted, it's

3    almost like a compound question, and as it's stated, I think

4    Clean Harbors Environmental Services, Inc. would have to deny

5    it.  If it's modified, it may be that Clean Harbors Services

6    and Clean Harbors Environmental Services, Inc. would be able to

7    answer the question without Mr. Rouleau losing Clean Harbors

8    Environmental Services, Inc. as a defendant.  I think that's

9    his main concern.

10         MR. ROULEAU:  Well, they're -- more to the point,

11    Judge, initial pleadings said "also known as Clean Harbors,

12    Inc."  I believe, when we get the 7.1 statement, when you get

13    it from either of them, that they're wholly owned subsidiaries

14    of Cleans Harbors, Inc.

15         And, in fact, I can -- if the Court would entertain,

16    I'd like to hand this up.

17       (Documents tendered to Court.)

18         MR. ROULEAU:  From their emergency response book,

19    you'll see that just published this year --

20         THE COURT:  I don't know what this is you handed up.

21         MR. ROULEAU:  Well, it's an emergency --

22         MR. KENNEDY:  May I see this?

23         MR. ROULEAU:  -- response book from Clean Harbors --

24         THE COURT:  Could you hand me a stapler?

25         MR. ROULEAU:  -- Environmental Services --

21

1    MR. KENNEDY:  Judge, I don't mean to interrupt

2    counsel, but could I get a copy of what he showed Your Honor?

3          THE COURT:  Yes, why don't you --

4          MR. ROULEAU:  I'm sorry.

5          THE COURT:  -- hand it down.  I am not going to take

6    further argument on that.

7          MR. ROULEAU:  Okay.

8          THE COURT:  Plus, it is a bunch of pages that aren't

9    stapled together.  So --

10         MR. ROULEAU:  Okay.  Well, Clean Harbors

11   Environmental Services referred to this as their Chicago

12   facility.

13         THE COURT:  All right.

14         MR. ROULEAU:  And they're responsible, so --

15         THE COURT:  All right.  We will keep the briefing

16   schedule.  I will rule on the issues.

17         Is there anything else we need to take up today?

18         MR. KENNEDY:  Do we need a status hearing, Your

19   Honor, or do you want to rule by mail and --

20         THE COURT:  I will rule electronically and then we

21   will set the case for a further status shortly thereafter.

22   Hopefully, that will bring things into perspective, and we can

23   then talk about what we are going to accomplish so we can keep

24   that trial date.  It seems to me we should be able to do that.

25         To the extent that new parties are being sought to be

**22**

1    brought in as third-party defendants, I would like the parties

2    that are in this case to provide the discovery that has been

3    uncovered in connection with this case so we can at least have

4    that as a starting point.

5         There may be a need for further discovery, but I

6    don't want it to delay the trial in any way.  It seems to me

7    that the discovery will not focus on the injury to Mr. Lopez

8    but the coverage questions.

9         MR. HAGERTY:  Your Honor, if I might say that we did

10   compile a four-CD set to provide to all the carriers.

11        THE COURT:  Okay.  So there are --

12        MR. HAGERTY:  We are well down --

13        THE COURT:  -- four CDs --

14        MR. HAGERTY:  -- the path --

15        THE COURT:  -- of discovery?

16        MR. HAGERTY:  Four CDs of information relevant to the

17   case.  So we are well down the path.  My point is we are well

18   down the path towards accomplishing that.

19        THE COURT:  Okay.

20        MR. HAGERTY:  And we'll handle that informally

21   without, I believe, the need of Court intervention.

22        THE COURT:  Okay.  Excellent.

23        MR. KENNEDY:  Judge, we do have two case management

24   issues.

25        THE COURT:  Okay.

23

1          MR. KENNEDY:  And it's kind of a conflict between

2     Your Honor's courtroom and Judge Darrah's courtroom.

3          Technically, Clean Harbors' responsive pleading to

4     Pacific's complaint in Judge Darrah's courtroom is due to be

5     filed May 20th, but in light of the fact that we're still with

6     the two courtrooms, I was wondering if Your Honor has the

7     authority to enter a stay of our Clean Harbors' obligation to

8     respond until the determination as to who the judge is.

9          THE COURT:  Does anyone mind if I call Judge Darrah

10    and inquire on that point?

11         MR. LICHTCSIEN:  We don't have any objection to the

12    discussing with Judge Darrah, Your Honor.  We just would like

13    to assert our position that we don't think the case should be

14    reassigned, so -- we'd like to move forward with the DJ that's

15    before Judge Darrah.  We think that's the most appropriate

16    forum to do it in.

17         THE COURT:  Okay.

18         MR. HAGERTY:  And --

19         MR. LICHTCSIEN:  Which I would add, Your Honor, is in

20    no --

21         THE COURT:  I know Judge Darrah is going to actually

22    be out of town at that time, because he and I were chatting

23    yesterday informally on another topic, so --

24         MR. HAGERTY:  But if it helps, Your Honor, I'll tell

25    you in open court what we will file before Judge Darrah.  It's

**24**

1   going to be a motion to dismiss, and it's going to have two

2   alternate components. So I don't think that's going to advance

3   the dec. action. I think it's ultimately what Judge Darrah

4   makes.

5        THE COURT: Well, let me talk to Judge Darrah, and

6   maybe we can coordinate this.

7        MR. KENNEDY: And the second thing -- thank you,

8   Judge.

9        The second issue is we're scheduled to see Judge

10   Mason today in continuance and furtherance of your referral to

11   Judge Mason of settlement, and we'll advise him accordingly.

12        I let him, his clerk, know yesterday that we had a

13   conflict, that we were supposed to be in the same court at the

14   same time as Your Honor.

15        And the question I have, is there a need to continue

16   the referral to Judge Mason given the current posture of the

17   case?

18        THE COURT: Well, I will continue the referral, but

19   you need not meet with him if it's not going to be fruitful.

20   And so you can just -- the referral will remain standing, so he

21   will be available at any point when it is reasonable for you

22   folks to talk with him.

23        MR. KENNEDY: He set today as a status on settlement,

24   so --

25        MR. ROULEAU: Correct.

25

1            THE COURT:  Yes, so you can just --

2            MR. KENNEDY:  So I think --

3            THE COURT:  What time are you supposed to see him?

4            MR. ROULEAU:  9:00.

5            MR. KENNEDY:  9:00 o'clock.  And his clerk said,

6    "Come down when you're done."

7            THE COURT:  Okay.  So why don't you go down and just

8    explain that it is really not feasible at this point, if it's

9    not feasible at this point, and I am sure he'll understand.

10           MR. KENNEDY:  Thank you, Judge.

11           THE COURT:  Okay?

12           MR. LICHTCSIEN:  Thank you.

13           THE COURT:  All right.  I won't set a further status

14   at this point.  I will set it when I rule electronically.  And

15   with the permission of counsel, I will talk with Judge Darrah.

16           MR. KENNEDY:  Thank you, Your Honor.

17           MR. ROULEAU:  Thank you.

18           MR. HAGERTY:  Thank you.

19           MR. LICHTCSIEN:  Thank you, Judge.

20         (Proceedings concluded.)

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

          I, Colleen M. Conway, do hereby certify that the

foregoing is a complete, true, and accurate transcript of the

proceedings had in the above-entitled case before the Honorable

JAMES F. HOLDERMAN, Chief Judge of said Court, at Chicago,

Illinois, on May 13, 2008.


          _/s/ Colleen M. Conway_                    _5/20/08_

          Official Court Reporter                    Date
        United States District Court
        Northern District of Illinois
             Eastern Division


Colleen M. Conway, Official Court Reporter

# EXHIBIT B



**FILED**

JUN 2 2 2005

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

HK/JMS-10857

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDDIE LOPEZ,                          )
          Plaintiff,          )
                                  )
          vs.                 )     No.
                                  )
CLEAN HARBORS ENVIRONMENTAL )
SERVICES, INC.,                       )
                                  )
          Defendant.          )

**JUDGE HOLDERMAN**

**05C 3645**

**MAGISTRATE JUDGE MASON**

### DEFENDANT'S NOTICE OF REMOVAL

NOW COMES the Defendant, CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.

a/k/a CLEAN HARBORS, INC., by and through its attorneys MYERS, MILLER & KRAUSKOPF,

and respectfully remove the above entitled action to this Court pursuant to 28 U.S.C. §1441 and

pursuant to 28 U.S.C. §1332(a)(1), and in support thereof, states the following:

**Procedural History**

**THIS MATTER WAS PREVIOUSLY ASSIGNED TO JUDGE HOLDERMAN**

    1.    Defendant was named in a civil action filed on or about March 27, 2003, in the

Circuit Court of Cook County, Illinois, case number 03 L 3730, entitled <u>Eddie Lopez and Sandy</u>

<u>Lopez v. Clean Harbors Environmental Services, Inc., a/k/a Clean Harbors, Inc., Defendant, and</u>

<u>CWM/CID Landfill, and Laraway Recycling & Disposal Facility, as Respondents in Discovery.</u>

    2.    Summons and Complaint were served upon the Defendant CLEAN HARBORS

ENVIRONMENTAL, INC. on or after March 21, 2003. (See complaint and summons attached

hereto as Exhibit A)

    3.    On May 13, 2003, the defendant filed its first Notice of Removal to the U.S. District

Court for the Northern District of Illinois, Eastern Division. (See Exhibit B attached hereto)

4.    The matter was designated cause number 03 C 3179 and assigned to Judge Holderman and Magistrate Judge Mason.

5.    On July 2, 2003, Judge Holderman granted plaintiff's motion to voluntarily dismiss the matter without prejudice. (See Exhibit C)

6.    Plaintiff re-filed the case in state court on June 30, 2004. (See Exhibit D)

7.    Defendant filed its second Notice of Removal on August 3, 2004. The matter was designated cause number 04 C 5107 and assigned to Judge Manning and Magistrate Judge Ashman. (See Exhibit E)

8.    On August 10, 2004, Judge Manning remanded the case to state court for failure to comply with Local Rule 81.2. (See Exhibit F)

9.    After the case was remanded to state court on August 10, 2004, defendant's counsel served plaintiff's counsel with a Request for Admission of Facts pursuant to Illinois Supreme Court Rule 216 in an effort to comply with the requirements of Local Rule 81.2.

10.    The litigation in state court proceeded on defendant's Request for Admission of Facts until Plaintiff's responses were filed and served on May 24, 2005.

11.    Effective April 25, 2005, Local Rule 81.2 was withdrawn.

12.    Defendant now brings its Notice of Removal for a third time.

### Notice of Removal

1.    Plaintiffs are residents of the State of Illinois.

2.    Plaintiff EDDIE LOPEZ alleges that he sustained "severe and permanent injury to his body, organs and nervous system; that as a result of his said injuries he has suffered and with

2

reasonable certainty will continue to suffer great pain and he has been and will permanently be hindered from attending to his affairs and duties and from following his usual occupation, and he has been deprived of large earnings and profits which he might otherwise have made, and he has been and will be compelled to expend or become liable for large sums of money for the care and treatment of his said injuries." (Plaintiff's complaint, Count 1, paragraph 8)

3.    Plaintiff filed his Illinois Supreme Court Rule 222 Affidavit in which he claims to have sustained damages in excess of $50,000. Plaintiff will be claiming that he became paralyzed as a result of Defendant's negligence. Plaintiff will be claiming that he is no longer able to work and has sustained traumatic and severe loss of normal life. If proven, Plaintiff's damages will amount to more than $75,000.

4.    Defendant CLEAN HARBORS ENVIRONMENTAL SERVICES, INC. is a Massachusetts corporation. Its corporate headquarters is located at 1501 Washington Street, Braintree, Massachusetts.

5.    Defendant is a citizen of Massachusetts. Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986).

6.    As Plaintiffs are residents of the State of Illinois, diversity of citizenship exists between the parties pursuant to 28 U.S.C. §1332(a)(1) and Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986).

7.    Plaintiff EDDIE LOPEZ's injury and damages are sufficient to meet the amount in controversy requirement of 28 U.S.C. §1332(a).

8.    Defendant is therefore entitled to remove this action to this court pursuant to 28 U.S.C. §1332(a)(1).

9.    Defendant has filed this Notice of Removal within the appropriate time frame as required by 28 U.S.C. §1446 (b).

WHEREFORE, the defendant CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., respectfully requests that this cause, which is now pending in the Circuit Court of Cook County, Illinois, case number 04 L 7347 be removed to the United States District Court, Northern District of Illinois.

Respectfully submitted,

MYERS, MILLER & KRAUSKOPF

Attorneys for Defendants
CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.

Jason M. Sax - 6243815
MYERS, MILLER & KRAUSKOPF
Two N. LaSalle St.
Suite 1200
Chicago, Illinois 60602
(312) 345-7250 / (312) 345-7251 FAX

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDDIE LOPEZ and SANDY LOPEZ,<br><br>   Plaintiff,<br><br>   vs.<br><br>CLEAN HARBORS ENVIRONMENTAL<br>SERVICES, INC., a/k/a CLEAN<br>HARBORS, INC,<br>   Defendant. | CASE NO. 05 C 3645 |

## AMENDED COMPLAINT

### COUNT I

**NOW COME** the plaintiffs, by and through their attorney, and without waiving or abandoning any of the claims set forth in the complaint that they filed in the Circuit Court of Cook County of the State of Illinois, and for a further cause of action against the defendant **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a/k/a CLEAN HARBORS, INC,** the Plaintiff, **EDDIE LOPEZ**, states the following to-wit:

1. That on or about April 6, 2001, and prior thereto, the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation (hereinafter "Defendant"), owned, operated and controlled a hazardous waste transfer, storage, and disposal facility which received, treated, processed and manufactured fuel at a facility located at 11800 South Stony Island Avenue, County of Cook, State of Illinois.

2. That on or about said date and prior thereto the plaintiff, **EDDIE LOPEZ**, was employed by Waste Management as a semi-rolloff driver.

3. That on or about said date and prior thereto the plaintiff, **EDDIE LOPEZ**, in the course of his employment drove a semi-rolloff vehicle onto defendant's facility for

the purpose of picking up and removing certain products from defendant's facility for delivery to a facility where Plaintiff would then deposit said waste products.

4. That on or about said date and prior thereto, and as part of its treatment and manufacturing of said fuel, the defendant stored for pickup certain materials including crushed and uncrushed drums containing waste substances, solid bulk material waste containing fuel and chemical additives and filter cake containing fuel and chemical additives.

5. That at the time of the occurrence complained of the plaintiff, **EDDIE LOPEZ**, was standing in the pickup area of defendant's facility loading the dumpster on his semi-rolloff vehicle in the usual and customary manner and in the manner directed by the defendant through its agents and employees.

6. That after his pickup of materials from defendant's facility the Plaintiff, **EDDIE LOPEZ** transported said dumpster directly to a landfill where he would then fully unload and deposit the contents into the landfills.

7. That at said time and place the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, by its agents and servants, carelessly and negligently:

   a. Permitted and allowed poisonous and toxic fumes to be emitted from the dumpsters which plaintiff was loading and unloading;

   b. Failed to institute proper safety procedures to prevent the escape of poisonous and toxic fumes created by its fuel manufacturing, waste treatment and hazardous chemical processing;

   c. Permitted and allowed plaintiff to stand and work in an area which was likely to contain poisonous and toxic fumes as a result of its fuel manufacturing, waste treatment and hazardous chemical processing;

d.  Failed to warn or otherwise instruct the plaintiff that he should not stand and
work in the loading area because he was likely to be exposed to the emission
of poisonous and toxic fumes;

e.  Failed to warn or otherwise instruct the plaintiff that he should not stand and
work in the unloading area because he was likely to be exposed to the
emission of poisonous and toxic fumes;

f.  Failed to provide the plaintiff with proper safety equipment when they knew
or should have known that he was likely to be exposed to poisonous and toxic
fumes.

g.  Failed to inform Mr. Lopez's employer that their employees including, but not
limited to the plaintiff **EDDIE LOPEZ** would be hauling open crushed drums
containing hazardous and acutely toxic chemicals that were not RCRA empty;

h.  Removed labels from drums containing hazardous chemicals which were non-
RCRA empty drums contrary to (40 CFR 261.7 [45 FR 78529, Nov. 25, 1980,
as amended at 47 FR 36097, Aug. 18, 1982; 48 FR 14294, Apr. 1, 1983; 50
FR 1999, Jan. 14, 1985; 51 FR 40637, Nov. 7, 1986] and 40 CFR **261.33**(c)
[45 FR 78529, 78541, Nov. 25, 1980])

i.  In the roll off dumpsters to be hauled by the plaintiff **EDDIE LOPEZ**, the
defendant by and through its agents and employees, placed open crushed
drums which dripped and leaked numerous substances which appear on the
lists of acutely toxic chemicals located in 40 CFR 261.31, 40 CFR 261.32, and
40 CFR 261.33(e) or (f) where said drums were not RCRA empty pursuant to
40 CFR Sec. 261.7(b)(3) while negligently representing said drums and plastic
liner to be RCRA empty non-hazardous waste.

j.  Failed to provide the special hazard communications, training in handling,
signage and labeling communications required by 29 CFR 1910.1045, 29 CFR
1910.1028 and 29 CFR 1910.1048 although the substances covered by said
regulations were present in the waste stream placed into the roll-off

dumpsters, the plastic liners placed into the roll-off dumpsters and the drums placed inside of the plastic liner within the roll-off dumpsters hauled by the Plaintiff **EDDIE LOPEZ** from the defendant's place of business.

k.  Failed to provide Material Safety Data Sheets (MSDS) to either the plaintiff **EDDIE LOPEZ** or his employer as required by 29 CFR 1910.1045, 29 CFR 1910.1028 and 29 CFR 1910.1048 although the substances covered by said regulations were present in the waste stream placed into the roll-off dumpsters, dumpster liners, and/or crushed drums

l.  Failed to require third parties employees who were present working on the defendant's premises, including the plaintiff, to comply with the defendant's rules and regulations regarding the handling and processing for containers containing Acrylonitrile, Benzene, Formaldehyde, or Methylene Chloride.

m.  Failed to require third parties employees who were present working on the defendant's premises, including the plaintiff, to comply with the defendant's rules and regulations regarding the handling and processing of open containers.

n.  Failed to place legally required signage on the roll-off dumpsters which are defined as containers in (40 C.F.R. 63.681) and defined as confined spaces (29 CFR 1926.21) which require warnings and signage 29 CFR Parts 1910, 1915, 1917, 1918, 1926, and 1928.

o.  Failed to take measures to prevent the cross-contamination of containers processed through the defendant's fuel blending process and the Pegasus unit so as to keep them from being contaminated with OSHA regulated substances used in the defendant's fuel manufacturing process.

p.  Failed to take measures to prevent the cross-contamination of containers processed through the defendant's fuel blending process and the Pegasus unit so as to keep them from being contaminated with acutely hazardous

substances having the generic name listed in 40 CFR 261.31, 40 CFR 261.32, and paragraphs (e) or (f) of section 40 CFR 261.33;

q.  Failed to properly label containers including (a) the roll-off dumpster, (b) the plastic liners placed into the roll-off dumpster and (c) the drums placed inside of the plastic liner within the roll-off dumpster

8.  That as a direct and proximate result and in consequence of one or more of the said wrongful acts of the defendant, the plaintiff, **EDDIE LOPEZ**, was caused to inhale quantities of poisonous and toxic fumes which were emitted from the fuel on defendant's premises and on the premises of the landfills where he was instructed to unload and deposit said materials.

9.  That thereby the plaintiff, **EDDIE LOPEZ**, sustained a severe and permanent injury to his body, organs and nervous system; that as a result of his said injuries he has suffered and with reasonable certainty will continue to suffer great pain and he has been and will permanently be hindered from attending to his affairs and duties and from following his usual occupation, and he has been deprived of large earnings and profits which he might otherwise have made, and he has been and will be compelled to expend or become liable for large sums of money for the care and treatment of his said injuries.

10. That this cause was originally filed as 03 L 3730 on March 27, 2003, and was removed by Defendant Clean Harbors to United States District Court, Northern District of Illinois, 03-cv-03179. It was dismissed by Hon. James F. Holderman without prejudice and pursuant to stipulation on July 2, 2003. Said stipulation expressly gave plaintiff the right to refile the subject action in any court with subject matter jurisdiction on or before July 1, 2004 and barred defendant Clean Harbors the defense of statute of limitations in the event of plaintiff's timely filing of same (Stipulation attached hereto as Plaintiff's Exhibit "A").

**WHEREFORE**, plaintiff, **EDDIE LOPEZ**, asks judgment against the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN**

**HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY
THOUSAND DOLLARS ($50,000.00).

## COUNT II – LOSS OF CONSORTIUM

1.-10. Plaintiff, **SANDY LOPEZ**, hereby repeats and realleges paragraphs 1 through 10
inclusive of Count I herein as and for paragraphs one (1) through ten (10) of this
Count II as if fully set forth herein.

11. Plaintiff, **SANDY LOPEZ**, is and at all times material herein was the lawfully
wedded wife of plaintiff, **EDDIE LOPEZ**, and she was living with, consorting and
cohabiting with her husband.

12. As the wife of **EDDIE LOPEZ**, plaintiff, **SANDY LOPEZ**, was accustomed to and
did receive love, affection and care from her husband and was dependent on him for
the necessities of life which he did provide; that further, she was entitled to and did
receive the consortium and society of her husband and the other concomitants of
married life and husbandly devotion.

13. As a direct and proximate consequence of the aforesaid negligent and careless acts of
the defendant, plaintiff's husband, **EDDIE LOPEZ**, became permanently and
severely injured and will remain so for the duration of his natural life; and thereby
plaintiff, **SANDY LOPEZ**, has suffered the loss of services of her husband and has
been deprived of his support, devotion, care, society and consortium.

14. Plaintiff, **SANDY LOPEZ**, had been and will continue to be hindered and prevented
from transacting and attending to her usual affairs and duties and has been caused to
expend large sums of money for the services which her husband could and would
have performed for her and has been and will continue to be greatly injured by the
wrongful conduct of defendant.

**WHEREFORE**, plaintiff, **SANDY LOPEZ**, asks judgment against the
defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a

**CLEAN HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT III – Strict Liability In Products

**NOW COME** the plaintiffs, by and through their attorney, and without waiving or abandoning any of the claims set forth in the complaint that they filed in the Circuit Court of Cook County of the State of Illinois, for a further cause of action against the defendant **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a/k/a CLEAN HARBORS, INC,** states the following to-wit:

1   That on or about April 6, 2001, and prior thereto, the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation (hereinafter "Defendant"), owned, operated and controlled a hazardous waste transfer, storage, and disposal facility which received, treated, processed, and recombined hazardous chemicals at a facility located at 11800 South Stony Island Avenue, County of Cook, State of Illinois.

2   That on or about said date and prior thereto the plaintiff, **EDDIE LOPEZ**, was employed by Waste Management as a semi-rolloff driver.

3   That on or about said date and both prior thereto and thereafter the plaintiff, **EDDIE LOPEZ**, in the course of his employment picked up semi-rolloff dumpster from the defendant containing certain chemical products from defendant's facility which had been processed and recombined as part of the defendant's manufacturing process for delivery to a another location.

4   That on or about said date and both prior thereto and thereafter, and as part of its manufacturing process, the defendant recombined and formulated fuel products consisting of "volatile organic chemicals" (VOC) and "volatile organic materials" (VOM).

5    That on or about said date and both prior thereto and thereafter the plaintiff as part of the defendant's product manufacturing the defendant combined numerous "volatile organic chemicals" (VOC) and "volatile organic materials" (VOM) in varying compositions and concentrations in part by allowing drums containing the aforesaid materials to drain and combine into a large plastic container lining the aforesaid roll-off dumpsters.

6    That at said time and place the aforesaid product was unreasonably dangerous when it left the possession and control of the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, by its agents and servants, in one (1) or more of the following particulars:

    a)    The product as packaged allowed poisonous and toxic fumes to be emitted from the fuel which plaintiff was loading and unloading;

    b)    The product as packaged failed to identify the chemical composition of said product;

    c)    The product as formulated and packaged by the defendant failed to contain any warnings of potential hazards associated with the aforesaid product or instruction on safe handling of said product;

    d)    The product failed to be accompanied by "Material Safety Data Sheets" (MSDS) as required by 820 ILCS 255/11; 29 CFR 1910.1045, 29 CFR 1910.1028 and 29 CFR 1910.1048;

    e)    Failed to warn or otherwise instruct the plaintiff that he should not stand and work within the product packaging (plastic dumpster liner or roll-off dumpster) because he was liable and likely to be exposed to the emission of poisonous and toxic fumes;

f)   Failed to warn the plaintiff or others who would come in contact with the gaseous and liquid contents of said product containers with proper safety equipment to prevent danger from said fumes and substance.

g)   Falsely and fraudulently represented said packages and product to be "empty" and non-hazardous;

h)   Removed labels from drums containing hazardous chemicals which were non-RCRA empty drums contrary to (40 CFR 261.33(c))

i)   Failed to place legally required labeling on the plastic liner, the roll-off dumpsters and the drums which are defined as containers (40 C.F.R. 63.681) as required by **29 CFR Parts 1910.1017, 1910.1028, 1910.1045, 1910.1048, 1910.1050, 1910.1052, and 1910.1200,**

7   That as a direct and proximate result and in consequence of one or more of the said unreasonably dangerous conditions of the aforesaid product, the plaintiff, **EDDIE LOPEZ,** was caused to ingest either by inhalation or transdermal contact quantities of poisonous and toxic fumes or chemicals which were emitted from or contained in the aforesaid product.

8   That thereby the plaintiff, **EDDIE LOPEZ,** sustained a severe and permanent injury to his body, organs and nervous system; that as a result of his said injuries he has suffered and with reasonable certainty will continue to suffer great pain and he has been and will permanently be hindered from attending to his affairs and duties and from following his usual occupation, and he has been deprived of large earnings and profits which he might otherwise have made, and he has been and will be compelled to expend or become liable for large sums of money for the care and treatment of his said injuries.

9   That this cause was originally filed as 03 L 3730 on March 27, 2003, and was removed by Defendant Clean Harbors to United States District Court, Northern District of Illinois, 03-cv-03179. It was dismissed by Hon. James F. Holderman without prejudice and pursuant to stipulation on July 2, 2003. Said stipulation

expressly gave plaintiff the right to refile the subject action in any court with subject matter jurisdiction on or before July 1, 2004 and barred defendant Clean Harbors the defense of statute of limitations in the event of plaintiff's timely filing of same (Stipulation attached hereto as Plaintiff's Exhibit "A").

WHEREFORE, plaintiff, **EDDIE LOPEZ**, asks judgment against the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT IV
### LOSS OF CONSORTIUM – STRICT LIABILITY IN PRODUCTS

1.-9. Plaintiff, **SANDY LOPEZ**, hereby repeats and realleges paragraphs 1 through 9 inclusive of Count III herein as and for paragraphs 1 through 9 of this Count IV as if fully set forth herein.

10. Plaintiff, **SANDY LOPEZ**, is and at all times material herein was the lawfully wedded wife of plaintiff, **EDDIE LOPEZ**, and she was living with, consorting and cohabiting with her husband.

11. As the wife of **EDDIE LOPEZ**, plaintiff, **SANDY LOPEZ**, was accustomed to and did receive love, affection and care from her husband and was dependent on him for the necessities of life which he did provide; that further, she was entitled to and did receive the consortium and society of her husband and the other concomitants of married life and husbandly devotion.

12. As a direct and proximate consequence of the aforesaid unreasonably dangerous condition of the product manufactured by the defendant, plaintiff's husband, **EDDIE LOPEZ**, became permanently and severely injured and will remain so for the duration of his natural life; and thereby plaintiff, **SANDY LOPEZ**, has suffered the

loss of services of her husband and has been deprived of his support, devotion, care, society and consortium.

13. Plaintiff, **SANDY LOPEZ**, had been and will continue to be hindered and prevented from transacting and attending to her usual affairs and duties and has been caused to expend large sums of money for the services which her husband could and would have performed for her and has been and will continue to be greatly injured by the wrongful conduct of defendant.

WHEREFORE, plaintiff, **SANDY LOPEZ**, asks judgment against the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT V – MATERIAL MISREPRESENTATION

NOW COME the plaintiff, **EDDIE LOPEZ** by and through their attorney, and without waiving or abandoning any of the claims set forth in the complaint that he filed in the Circuit Court of Cook County of the State of Illinois, for a further cause of action against the defendant **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a/k/a CLEAN HARBORS, INC,** states the following to-wit:

1  That on or about April 6, 2001, and prior thereto, the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation (hereinafter "Defendant"), owned, operated and controlled a hazardous waste transfer, storage, and disposal facility which received, treated, processed, and recombined hazardous chemicals at a facility located at 11800 South Stony Island Avenue, County of Cook, State of Illinois.

2  That on said date the plaintiff, **EDDIE LOPEZ**, was employed by Waste Management as a semi-rolloff driver.

3   That on or about said date and both prior thereto and thereafter the plaintiff, **EDDIE LOPEZ**, in the course of his employment picked up semi-rolloff dumpsters from the defendant containing certain chemical products from defendant's facility which had been processed and recombined as part of the defendant's manufacturing process for delivery to a another location.

4   That on or about said date and prior thereto the defendant knowingly and intentionally represented to the plaintiff that the product that was contained in the aforesaid roll-off dumpsters was RCRA ("Resource Conservation and Recovery Act) empty and non-hazardous material.

5   That on or about said date and prior thereto the defendant knowingly and intentionally represented to the plaintiff's employer, with the intent that the plaintiff's employer communicate such information to the plaintiff, that the product that was contained in the aforesaid roll-off dumpsters was RCRA ("Resource Conservation and Recovery Act) empty and non-hazardous material.

6   That on or about said date and prior thereto, as part of its manufacturing process, the defendant recombined and formulated fuel products consisting of "volatile organic chemicals" (VOC) and "volatile organic materials" (VOM) placing crushed drums containing amounts of various substances with generic names that are listed in paragraphs 40 CFR 261.31, 40 CFR 261.32, and (e) or (f) of section 40 CFR 261.33 into a new container consisting of a plastic liner within the aforesaid roll-off dumpsters in which said substances would combine.

7   The defendant through its agents and employees did not triple rinse the crushed drums using a solvent capable of removing the commercial chemical product or manufacturing chemical intermediate; or clean the crushed drums by using another method that has been shown in the scientific literature, or by tests conducted by the generator, to achieve equivalent removal or triple rinsing.

8   Many of crushed drums placed into the roll-off dumpsters were not RCRA empty as defined in 40 CFR 261.7 [45 FR 78529, Nov. 25, 1980, as amended at 47 FR 36097,

Aug. 18, 1982; 48 FR 14294, Apr. 1, 1983; 50 FR 1999, Jan. 14, 1985; 51 FR 40637, Nov. 7, 1986] and 40 CFR **261.33**(c) [45 FR 78529, 78541, Nov. 25, 1980].

9    The plaintiff reasonably relied upon the representations of the defendant by and through its agents and employees that the aforesaid products that he was picking up at the defendant's place of business were RCRA empty ***non-hazardous*** crushed drums.

10   The defendant through its agents and employees knew, or through the exercise of reasonable judgment should have known, of the regulatory definition of RCRA empty as defined in 40 CFR 261.7 [45 FR 78529, Nov. 25, 1980, as amended at 47 FR 36097, Aug. 18, 1982; 48 FR 14294, Apr. 1, 1983; 50 FR 1999, Jan. 14, 1985; 51 FR 40637, Nov. 7, 1986] and 40 CFR **261.33**(c) [45 FR 78529, 78541, Nov. 25, 1980] when they made the aforesaid representations to the plaintiff and plaintiff's employer.

11   That as a result of the plaintiff's reliance upon the material misrepresentations as to the nature of the cargo that the plaintiff did not undertake the safety precautions regarding handling and personal protection equipment (PPE) that he would have otherwise used had he been aware of the harmful, and toxic nature of the cargo.

12   That as a direct and proximate result of the defendant's material misrepresentations as to the nature of the cargo the plaintiff became exposed to the toxic nature of the aforesaid cargo thereby causing him to sustain severe and permanent injuries to his body, organs and nervous system; that as a result of his said injuries he has suffered and with reasonable certainty will continue to suffer great pain and he has been and will permanently be hindered from attending to his affairs and duties and from following his usual occupation, and he has been deprived of large earnings and profits which he might otherwise have made, and he has been and will be compelled to expend or become liable for large sums of money for the care and treatment of his said injuries.

13   That this cause was originally filed as 03 L 3730 on March 27, 2003, and was removed by Defendant Clean Harbors to United States District Court, Northern District of Illinois, 03-cv-03179. It was dismissed by Hon. James F. Holderman

without prejudice and pursuant to stipulation on July 2, 2003. Said stipulation expressly gave plaintiff the right to refile the subject action in any court with subject matter jurisdiction on or before July 1, 2004 and barred defendant Clean Harbors the defense of statute of limitations in the event of plaintiff's timely filing of same (Stipulation attached hereto as Plaintiff's Exhibit "A").

**WHEREFORE**, plaintiff, **EDDIE LOPEZ**, asks judgment against the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT VI
## LOSS OF CONSORTIUM – MATERIAL MISREPRESENTATION

1.- 13. Plaintiff, **SANDY LOPEZ**, hereby repeats and realleges paragraphs 1 through 13 inclusive of Count V herein as and for paragraphs 1 through 13 of this Count VI as if fully set forth herein.

14. Plaintiff, **SANDY LOPEZ**, is and at all times material herein was the lawfully wedded wife of plaintiff, **EDDIE LOPEZ**, and she was living with, consorting and cohabiting with her husband.

15. As the wife of **EDDIE LOPEZ**, plaintiff, **SANDY LOPEZ**, was accustomed to and did receive love, affection and care from her husband and was dependent on him for the necessities of life which he did provide; that further, she was entitled to and did receive the consortium and society of her husband and the other concomitants of married life and husbandly devotion.

16. As a direct and proximate consequence of the aforesaid material misrepresentation of the defendant, plaintiff's husband, **EDDIE LOPEZ**, became permanently and severely injured and will remain so for the duration of his natural life; and thereby

plaintiff, **SANDY LOPEZ**, has suffered the loss of services of her husband and has been deprived of his support, devotion, care, society and consortium.

17. Plaintiff, **SANDY LOPEZ**, had been and will continue to be hindered and prevented from transacting and attending to her usual affairs and duties and has been caused to expend large sums of money for the services which her husband could and would have performed for her and has been and will continue to be greatly injured by the wrongful conduct of defendant.

    **WHEREFORE**, plaintiff, **SANDY LOPEZ**, asks judgment against the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).


## COUNT VII – BREECH OF EXPRESS WARRANTY

    **NOW COME** the plaintiff, **EDDIE LOPEZ** by and through their attorney, and without waiving or abandoning any of the claims set forth in the complaint that he filed in the Circuit Court of Cook County of the State of Illinois, for a further cause of action against the defendant **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a/k/a CLEAN HARBORS, INC,** states the following to-wit:

1   That on or about April 6, 2001, and prior thereto, the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation (hereinafter "Defendant"), owned, operated and controlled a hazardous waste transfer, storage, and disposal facility which received, treated, processed, and recombined hazardous chemicals at a facility located at 11800 South Stony Island Avenue, County of Cook, State of Illinois.

2   That on said date the plaintiff, **EDDIE LOPEZ**, was employed by Waste Management as a semi-rolloff driver.

3    That on or about said date and both prior thereto and thereafter the plaintiff, **EDDIE LOPEZ**, in the course of his employment picked up semi-rolloff dumpsters from the defendant containing certain chemical products from defendant's facility which had been processed and recombined as part of the defendant's manufacturing process for delivery to a another location.

4    That on or about said date and prior thereto the defendant made an express warranty to the plaintiff's employer to the plaintiff that the product that was contained in the aforesaid roll-off dumpsters was RCRA ("Resource Conservation and Recovery Act) empty and non-hazardous materials.  The warranties were as follows:

"1. All containers have a rated capacity of ≤110 gallons only.
2. All containers meet *the* following definition of empty:
- Contain less than 2.5 centimeters (one inch) of residue
                                    and
- No more than 3% of weight of the total capacity of the container remains in the container
                                    and
- All wastes have been removed that can be removed using the practices commonly employed to remove material from the type of container.

3. Further, at no time were hazardous wastes identified as acutely toxic or TSCA regulated quantities of PCB's stored in these containers pursuant to 40 CFR parts 261 and 761 respectively." (See Exhibit "A" attached hereto).

5    That on or about said date and prior thereto, as part of its manufacturing process, the defendant recombined and formulated fuel products consisting of "volatile organic chemicals" (VOC) and "volatile organic materials" (VOM) which are identified in 40 CFR parts 261 as acutely toxic, placing crushed drums, which were not empty as defined in said code, containing amounts of said substances into a new container consisting of a plastic liner within the aforesaid roll-off dumpsters in which said substances would combine.

6    The plaintiff reasonably relied upon the warranties of the defendant by and through its agents and employees regarding the nature of the materials being shipped.

7   The defendant through its agents and employees knew, or through the exercise of
reasonable judgment should have known, of the regulatory definition of acutely toxic
as stated in 40 CFR 261 [45 FR 78529, Nov. 25, 1980, as amended at 47 FR 36097,
Aug. 18, 1982; 48 FR 14294, Apr. 1, 1983; 50 FR 1999, Jan. 14, 1985; 51 FR 40637,
Nov. 7, 1986] when they made the aforesaid express warranties to the plaintiff and
plaintiff's employer.

8   That as a result of the plaintiff's reliance upon the express warranties as to the nature
of the cargo that the plaintiff did not undertake the safety precautions regarding
handling and personal protection equipment (PPE) that he would have otherwise used
had he been aware of the harmful, and toxic nature of the cargo.

9   That as a direct and proximate result of the defendant's express warranties as to the
nature of the cargo the plaintiff became exposed to the toxic nature of the aforesaid
cargo thereby causing him to sustain severe and permanent injuries to his body,
organs and nervous system; that as a result of his said injuries he has suffered and
with reasonable certainty will continue to suffer great pain and he has been and will
permanently be hindered from attending to his affairs and duties and from following
his usual occupation, and he has been deprived of large earnings and profits which he
might otherwise have made, and he has been and will be compelled to expend or
become liable for large sums of money for the care and treatment of his said injuries.

10  That this cause was originally filed as 03 L 3730 on March 27, 2003, and was
removed by Defendant Clean Harbors to United States District Court, Northern
District of Illinois, 03-cv-03179. It was dismissed by Hon. James F. Holderman
without prejudice and pursuant to stipulation on July 2, 2003. Said stipulation
expressly gave plaintiff the right to refile the subject action in any court with subject
matter jurisdiction on or before July 1, 2004 and barred defendant Clean Harbors the
defense of statute of limitations in the event of plaintiff's timely filing of same
(Stipulation attached hereto as Plaintiff's Exhibit "A").

    **WHEREFORE**, plaintiff, **EDDIE LOPEZ**, asks judgment against the defendant,
**CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN**

**HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT VIII

## LOSS OF CONSORTIUM – BREECH OF EXPRESS WARRANTY

1.- 10. Plaintiff, **SANDY LOPEZ**, hereby repeats and realleges paragraphs 1 through 10 inclusive of Count VII herein as and for paragraphs 1 through 10 of this Count VIII as if fully set forth herein.

11. Plaintiff, **SANDY LOPEZ**, is and at all times material herein was the lawfully wedded wife of plaintiff, **EDDIE LOPEZ**, and she was living with, consorting and cohabiting with her husband.

12. As the wife of **EDDIE LOPEZ**, plaintiff, **SANDY LOPEZ**, was accustomed to and did receive love, affection and care from her husband and was dependent on him for the necessities of life which he did provide; that further, she was entitled to and did receive the consortium and society of her husband and the other concomitants of married life and husbandly devotion.

13. As a direct and proximate consequence of the aforesaid material misrepresentation of the defendant, plaintiff's husband, **EDDIE LOPEZ**, became permanently and severely injured and will remain so for the duration of his natural life; and thereby plaintiff, **SANDY LOPEZ**, has suffered the loss of services of her husband and has been deprived of his support, devotion, care, society and consortium.

14. Plaintiff, **SANDY LOPEZ**, had been and will continue to be hindered and prevented from transacting and attending to her usual affairs and duties and has been caused to expend large sums of money for the services which her husband could and would have performed for her and has been and will continue to be greatly injured by the wrongful conduct of defendant.

**WHEREFORE**, plaintiff, **SANDY LOPEZ**, asks judgment against the defendant, **CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.**, a/k/a **CLEAN HARBORS, INC.**, a corporation, for a fair and reasonable sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

**EDDIE LOPEZ AND SANDY LOPEZ,**

By: _____//s// Mark Rouleau_____

**MARK A. ROULEAU**

**MARK A. ROULEAU**
5301 E. State St., Suite 215D
Rockford, Illinois 61108
(815) 229-7246