IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY, a Pennsylvania corporation, INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, and ACE PROPERTY AND CASUALTY INSURANCE COMPANY f/k/a/ CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 2180 |
| CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., a Massachusetts corporation, and CLEAN HARBORS, INC., a Massachusetts corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COME Plaintiffs, Pacific Employers Insurance Company ("PEIC"), Insurance Company of North America ("INA") and ACE Property and Casualty Insurance Company f/k/a/ CIGNA Property and Casualty Insurance Company ("ACE P&C"), by their attorneys, Cozen O'Connor, and for their Amended Complaint for Declaratory Judgment against Defendants, Clean Harbors Environmental Services, Inc. and Clean Harbors, Inc. (may be collectively referred to herein as "Clean Harbors"), allege as follows:

**NATURE OF CLAIM**

1.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201(a) and Federal Rule of Civil Procedure 57 seeking a determination of the rights and obligations of the parties in connection with certain insurance policies that Plaintiffs issued to Clean Harbors.

2.     Clean Harbors has been sued by Mr. Eddie Lopez and Ms. Sandy Lopez, who made claims against Clean Harbors for, among other things, negligence, strict liability, material misrepresentation, breach of warranty, and loss of consortium, as a result of Clean Harbors' alleged actions.

3.     PEIC, INA and ACE P&C seek a declaration from this Court that, under the terms of the insurance policies issued to Clean Harbors, PEIC, INA and ACE P&C have no duty to indemnify Clean Harbors for any recovery by the Lopezes as a result of the allegations in their Complaint.

**THE PARTIES**

4.     PEIC is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Philadelphia. At all relevant times, PEIC was authorized to and did conduct business in Illinois and issue liability policies to entities doing business in Illinois.

5.     INA is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Philadelphia. At all relevant times, INA was authorized to and did conduct business in Illinois and issue liability policies to entities doing business in Illinois.

6.     ACE P&C is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Philadelphia. At all relevant times, ACE P&C was authorized to and did conduct business in Illinois and issue liability policies to entities doing business in Illinois.   The name of the company was changed from CIGNA Property and Casualty Insurance Company ("CIGNA") to ACE Property and Casualty Insurance Company on November 1, 1999.

7.     Clean Harbors, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located in Norwell, Massachusetts.  At all relevant times, Clean Harbors was authorized to and did conduct business in Illinois.

8.     Clean Harbors Environmental Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located in Quincy, Massachusetts.  At all relevant times, Clean Harbors Environmental Services, Inc. was authorized to and did conduct business in Illinois.

## JURISDICTION AND VENUE

9.     This Court is vested with subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy is greater than $75,000, 28 U.S.C. § 2201(a) and Federal Rule of Civil Procedure 57.

10.     The parties named herein have or claim to have an interest in this matter in controversy or would be affected by any declaration made by this Court.

11.     An actual and justiciable controversy exists between the parties to this proceeding.

12.     This Court has *in personam* jurisdiction over PEIC, as PEIC is authorized to and does conduct business in Illinois and issue liability policies to entities doing business in Illinois.

13.     This Court has *in personam* jurisdiction over INA, as INA is authorized to and does conduct business in Illinois and issue liability policies to entities doing business in Illinois.

14.     This Court has *in personam* jurisdiction over ACE P&C, as ACE P&C is authorized to and does conduct business in Illinois and issue liability policies to entities doing business in Illinois.

15.    Upon information and belief, this Court has *in personam* jurisdiction over both Clean Harbors, Inc. and Clean Harbors Environmental Services, Inc., as they are authorized to and do conduct business in Illinois.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the underlying claim and litigation occurred within this judicial district.

## THE UNDERLYING LITIGATION AND CLAIM HISTORY

17.    On September 25, 2002, Eddie Lopez filed a Verified Petition for Discovery ("Verified Petition") against Clean Harbors.  The Verified Petition was served on Clean Harbors on or about October 25, 2002.

18.    Clean Harbors tendered the Lopez claim for insurance coverage on or about November 6, 2002.

19.    On March 25, 2003, PEIC issued a reservation of rights letter to Clean Harbors. The March 25, 2003 reservation of rights letter reserved all of PEIC's rights and defenses with respect to the Lopez claim.

20.    On March 27, 2003, Eddie Lopez and Sandy Lopez filed a Complaint against Clean Harbors in the Circuit Court of Cook County ("Circuit Court"), case no. 03 L 3730.  On May 13, 2003, Clean Harbors removed the case to the United States District Court for the Northern District of Illinois ("District Court").  The District Court assigned case no. 03 C 3179 to the matter.

21.    On July 2, 2003, the District Court dismissed the case without prejudice pursuant to a stipulation which expressly provided that the Lopezes had the right to re-file their suit.

22.     On June 30, 2004, Eddie and Sandy Lopez re-filed their Complaint against Clean Harbors in the Circuit Court, case no. 04 L 7347 (the "underlying litigation").

23.     On August 3, 2004, Clean Harbors removed the case to the District Court for the second time.  The District Court assigned case no. 04 C 5107 to the matter.

24.     On August 10, 2004, the District Court remanded the case to the Circuit Court for failure to comply with Local Rule 81.2.  Effective April 25, 2005, Local Rule 81.2 was withdrawn.

25.     On June 22, 2005, Clean Harbors removed the case to the District Court for the third time.  The District Court assigned case no. 05 C 3645 to the matter.

26.     In response to inquiries by representatives of Clean Harbors on or about October 3, October 20 and October 24, 2006 with respect to PEIC's coverage position, PEIC responded to Clean Harbors on or about November 8, 2006 and November 21, 2006 that it stood by its coverage position as stated in its reservation of rights letter dated March 25, 2003.

27.     On December 3, 2007, Eddie and Sandy Lopez filed an Amended Complaint in the District Court against "Clean Harbors Environmental Services, Inc., a/k/a Clean Harbors, Inc."  The Amended Complaint alleges, *inter alia*, causes of action for negligence, strict liability, material misrepresentation, breach of warranty, and loss of consortium.

28.     The Amended Complaint further alleges that, *inter alia*, Mr. Lopez was employed by a waste hauler as a driver to pick up and remove waste products from various disposal facilities, including the Clean Harbors facility.

29.     The Amended Complaint further alleges that on or about April 6, 2001, Mr. Lopez was at the Clean Harbors facility for the purpose of picking up and removing various waste substances in dumpsters for delivery to a landfill, and that while he was at the Clean

Harbors facility, he was exposed to and inhaled "poisonous and toxic fumes" that were "emitted from the dumpsters." The Amended Complaint further alleges that Mr. Lopez sustained "severe and permanent injury to his body, organs and nervous system[.]"

30.     The Amended Complaint further alleges that Clean Harbors caused (1) damage to Mr. Lopez in excess of $50,000; and (2) damage to Ms. Lopez in excess of $50,000.

31.     PEIC issued supplemental reservation of rights letters to Clean Harbors with respect to the Lopez Amended Complaint on January 25, 2008 and April 7, 2008.

32.     Clean Harbors appeared to purport to tender the Lopez claim against additional insurance policies by three letters dated April 8, 2008. Based on information and belief, these letters were never mailed but copies of them were produced in an informal document production.

33.     PEIC acknowledged receipt of the three April 8, 2008 letters by letter dated May 1, 2008. Receiving no further explanation pertaining to the three April 8, 2008 letters from Clean Harbors, PEIC, INA and ACE P&C responded to the three April 8, 2008 letters by issuing additional reservation of rights letters to Clean Harbors dated June 26, 2008 and July 21, 2008.

## THE PEIC INSURANCE POLICIES

34.     PEIC issued Commercial General Liability Policy No. HDO G20577010 to Clean Harbors, effective November 1, 2000 to November 1, 2001 (the "2000 Policy"), with limits of liability $1,000,000 per occurrence, $1,000,000 products/completed operations aggregate, and $3,000,000 general aggregate (other than products/completed operations).

35.     The relevant portions of the 2000 Policy include the following:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

        *        *        *

[As amended in Endt. # 40.]

2.      **Exclusions**

This insurance does not apply to:

a.      **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

[As amended in Endt. # 43]

b.      **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*          \*          \*

## POLLUTION EXCLUSION - HOSTILE FIRE EXCEPTION

\*          \*          \*

1.    This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.

Section 1. of this exclusion does not apply to:

"Bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire:

a.    At or from premises you own, rent, or occupy; or

b.    At or from any site or location on which you or any of your contractors working directly or indirectly on your behalf are performing operations, if pollutants are brought on or to the site in connection with such operations.

A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2.    This insurance does not apply to any expense, cost or loss arising out of any:

a.    Request, demand or order that any or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollution; or

b.    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollution.

We shall have no duty to defend any "suit", claim or proceeding arising out of or in any way related to pollution excluded by this endorsement.

Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance, including

pollutants, if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

Pollutants include any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

[Endt. # 44]

\*        \*        \*

**SECTION V - DEFINITIONS**

\*        \*        \*

**3.**        "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

**13.**        "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

36.        PEIC also issued Commercial General Liability Policy No. HDO G19316798, effective November 1, 1998 to November 1, 1999 (the "1998 Policy") and Commercial General Liability Policy No. HDO G19900368, effective November 1, 1999 to November 1, 2000 (the "1999 Policy") to Clean Harbors.  Both the 1998 Policy and 1999 Policy have limits of liability of $1,000,000 per occurrence, $1,000,000 products/completed operations aggregate, and $3,000,000 general aggregate (other than products/completed operations).

37.        The 1998 Policy and the 1999 Policy contain substantially similar insuring agreements and definitions to the 2000 Policy.  In addition, Endorsement No. 6 to the 1998 Policy and Endorsement No. 8 to the 1999 Policy contain absolute pollution exclusions that are substantially similar to the absolute pollution exclusion in the 2000 Policy.

38.     The absolute pollution exclusions in the 1998 Policy and the 1999 Policy state as follows.

>  This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out or in any way related to pollution, however caused.
>
>  Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful or dangerous.  Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.
>
>  We shall have no duty to defend any suit arising out of or in any way related to pollution.

### THE CIGNA INSURANCE POLICIES

39.     CIGNA issued Commercial General Liability Policy No. HDO G1932141-1, effective November 1, 1996 to November 1, 1997 (the "1996 Policy") and Commercial General Liability Policy No. HDO G1932229-4, effective November 1, 1997 to November 1, 1998 (the "1997 Policy") to Clean Harbors.  Both the 1996 Policy and 1997 Policy have limits of liability of $1,000,000 per occurrence, $1,000,000 products/completed operations aggregate, and $3,000,000 general aggregate (other than products/completed operations).  CIGNA's name, as set forth above, was subsequently changed to ACE Property & Casualty Insurance Company.

40.     The 1996 Policy and the 1997 Policy contain substantially similar insuring agreements and definitions to the 1998 Policy, the 1999 Policy and the 2000 Policy.  In addition, Endorsement No. 6 to the 1996 Policy and Endorsement No. 2 to the 1997 Policy contain absolute pollution exclusions that are substantially similar to the absolute pollution exclusion in the 1998 Policy, the 1999 Policy and the 2000 Policy.

41.     The absolute pollution exclusions in the 1996 Policy and the 1997 Policy state as follows:

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out or in any way related to pollution, however caused.

Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful or dangerous.  Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

## THE INA INSURANCE POLICIES

42.    INA issued Commercial General Liability Policy No. HDO G0962296-2, effective November 1, 1993 to November 1, 1994 (the "1993 Policy"), Commercial General Liability Policy No. HDO G0962393, effective November 1, 1994 to November 1, 1995 (the "1994 Policy") and Commercial General Liability Policy No. HDO G1423291-6, effective November 1, 1995 to November 1, 1996 (the "1995 Policy") to Clean Harbors.  The 1993 Policy, the 1994 Policy and the 1995 Policy each have limits of $1,000,000 per occurrence, $1,000,000 products/completed operations aggregate, and $3,000,000 general aggregate (other than products/completed operations).

43.    The 1993 Policy, the 1994 Policy and the 1995 Policy contain substantially similar insuring agreements and definitions to the 1996 Policy, the 1997 Policy, the 1998 Policy, the 1999 Policy and the 2000 Policy.  In addition, Endorsement No. 10 to the 1993 Policy, Endorsement No. 28 to the 1994 Policy, and Endorsement No. 10 to the 1995 Policy contain absolute pollution exclusions that are substantially similar to the absolute pollution exclusions in the 1996 Policy, the 1997 Policy, the 1998 Policy, the 1999 Policy and the 2000 Policy.

44.    The absolute pollution exclusion in the 1993 Policy states as follows:

Any exclusion in the policy relating to the actual, alleged or threatened discharge, dispersal, release or escape of pollutants and any loss, costs, or expense arising therefrom is replaced by the following:

to "bodily injury" or "property damage" arising out of or in any way related to the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants by whomever caused, including, but not limited to, into or upon land, the atmosphere or any watercourse or body of water, including underground water or water table supplies.

This insurance also does not apply to any cost or expense arising out of any demand or request that an insured test for, assess, monitor, clean-up, remove, contain, treat, detoxify, or neutralize any pollutants.  This includes demands, directives, complaints, suits, or requests brought by any governmental entity or by any person or group of persons.

We shall not have the duty to defend any claim or suit seeking to impose such costs, expenses, liability for damages, or any other relief.

Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to smoke, vapors, soot, fumes, acids, alkalis, chemicals and wastes, including materials to be recycled, reconditioned or reclaimed.

45.     The absolute pollution exclusions in the 1994 Policy and the 1995 Policy state as

follows:

This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out or in any way related to pollution, however caused.

Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful or dangerous.  Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

We shall have no duty to defend any suit arising out of or in any way related to pollution.

## COUNT I
## DECLARATORY RELIEF WITH RESPECT TO INSURANCE COVERAGE

46.     PEIC, INA and ACE P&C restate and reallege Paragraphs 1 through 45 as if fully

set forth herein.

47.     PEIC, INA and ACE P&C request a judicial determination that, under the terms and conditions of the various Policies, including but not limited to the various pollution exclusions identified in the preceding paragraphs, PEIC, INA and ACE P&C have no obligation to indemnify Clean Harbors for sums that may be awarded based on the allegations in the Amended Complaint in the underlying litigation.

48.     PEIC, INA and ACE P&C have no obligation to indemnify Clean Harbors on the grounds that the Policies do not provide insurance coverage for any injury as alleged in the Amended Complaint in the underlying litigation.

WHEREFORE, Plaintiffs, Pacific Employers Insurance Company, Insurance Company of North America, and ACE Property and Casualty Insurance Company, request this Court to enter an Order granting the following relief:

1.     Declaring the respective rights and obligations of the parties under the Policies at issue;

2.     Declaring that Plaintiffs, PACIFIC EMPLOYERS INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, and ACE PROPERTY AND CASUALTY INSURANCE COMPANY, have no obligation to indemnify Defendants, CLEAN HARBORS ENVIRONMENTAL SERVICES, INC. and CLEAN HARBORS, INC., against the allegations in the Amended Complaint in the underlying litigation;

3.     Awarding attorney's fees and costs of this action; and

4.     Awarding any and all other relief that this Court deems appropriate and just.

By:  s/ Bruce Lichtcsien_____
Attorney for Plaintiffs, Pacific Employers
Insurance Company, Insurance Company of North
America and ACE Property and Casualty
Insurance Company

Matthew T. Walsh
Bruce M. Lichtcsien
Cozen O'Connor
222 South Riverside Plaza, Suite 1500
Chicago, Illinois 60606
(p)(312) 382-3100
(f)(312) 382-8910

Of Counsel:
Thomas M. Jones
Helen A. Boyer
Matthew D. Taylor
Cozen O'Connor
1201 Third Avenue, Suite 5200
Seattle, WA 98101
(p)(206) 340-1000
(f)(206) 621 8783

641000/3  216939.000