

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PACIFIC EMPLOYERS INSURANCE ) <br> COMPANY, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CLEAN HARBORS ENVIRONMENTAL ) <br> SERVICES, INC., et al., ) <br> ) <br> Defendants. ) <br> _____) <br> ) <br> CLEAN HARBORS ENVIRONMENTAL ) <br> SERVICES, INC., et al., ) <br> ) <br> Counterclaim and Third-Party Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PACIFIC EMPLOYERS INSURANCE COMPANY, ) <br> ) <br> Counterclaim Defendant, ) <br> ) <br> and ) <br> ) <br> NATIONAL UNION FIRE INSURANCE COMPANY OF ) <br> PITTSBURGH, PENNSYLVANIA, ) <br> ) <br> Third-Party Defendant. ) | No. 08 C 2180 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On April 16, 2008, Pacific Employers Insurance Company ("PEIC") brought suit against Clean Harbors Environmental Services, Inc. and Clean Harbors, Inc. (collectively, "Clean Harbors"), seeking a declaratory judgment that PEIC had no duty to indemnify Clean Harbors for amounts paid by Clean Harbors in a personal injury suit filed by Eddie Lopez

against Clean Harbors. On September 26, 2008, Clean Harbors filed a counterclaim against PEIC and a third-party complaint against National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), seeking judicial declaration that PEIC and National Union were obligated to defend and indemnify Clean Harbors against all claims made in the Lopez suit. On February 25, 2010, pursuant to a settlement agreement, Clean Harbors dismissed the counterclaim against PEIC. On August 23, 2010, a bench trial commenced as to the remaining claims between Clean Harbors and National Union.

The Court has considered the evidence, including the testimony of the witnesses and exhibits, and has further considered the written arguments of counsel for the parties and the authority cited therein. The Court weighed the testimony of each witness and determined whether the testimony was truthful and accurate (in part, in whole, or not at all) and decided what weight, if any, to give to the testimony of each witness. In making this determination, the Court considered, among other things: the ability and opportunity the witness had to see, hear, or know the things about which the witness testified; the witness's memory; any interest, bias or prejudice the witness may have; the witness's intelligence; the manner of the witness while testifying; and the reasonableness of the witness's testimony in light of all of the evidence in the case. *See* Fed. Civ. Jury Instr. 7th Cir. § 1.13 (2009).

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all of the admissible evidence and this Court's own assessment of the credibility of the trial witnesses. To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent, if any, that Conclusions of Law, as

stated, may be considered Findings of Fact, they shall be deemed Findings of Fact. The Decision section of this Opinion and Order, for purposes of organization and clarity, contains some reference to law and facts. To the extent, if any, that any part of the Decision may be considered Findings of Fact or Conclusions of Law, it shall be so deemed.

## FINDINGS OF FACT

Clean Harbors owns and operates a hazardous waste transfer, storage and disposal facility at 11800 South Stony Island, Chicago, Illinois (the "Chicago Facility"). PEIC issued a Comprehensive General Liability ("CGL") insurance policy to Clean Harbors (the "PEIC Policy"). The PEIC Policy had a policy period of November 1, 2000 to November 1, 2001, an aggregate limit of $3 million and a per-occurrence limit of $1 million. National Union issued an Excess and Umbrella Liability policy to Clean Harbors (the "NU Policy"). The NU Policy had a policy period identical to the PEIC Policy and a per-occurrence limit of $30 million.

On March 27, 2003, Eddie Lopez ("Lopez") filed a lawsuit against Clean Harbors in the Circuit Court of Cook County, alleging that he had suffered bodily injury as the result of exposure to unknown substances at the Chicago Facility. Clean Harbors provided timely notice of the lawsuit to National Union. Clean Harbors removed the case to this court, and on July 2, 2003, the suit was voluntarily dismissed. National Union was advised that the suit had been dismissed and, on September 8, 2003, closed its file on the case.

On June 30, 2004, Lopez and his wife refiled their lawsuit in the Circuit Court of Cook County, Illinois. Clean Harbors again removed the suit to the United States District Court for the Northern District of Illinois. Lopez alleged that he had suffered bodily injury as a result of inhaling toxic fumes from crushed metal drums that had been discarded from the fuel-blending

3

operation in Building 43 at Clean Harbors' Chicago Facility on April 6, 2001. At the time, Lopez was an employee of Waste Management, Inc. and was tasked with picking up and hauling away these crushed drums. Lopez is currently a paraplegic and suffers from mental impairments, allegedly as a result of exposure to chemicals at Clean Harbors' Chicago Facility.

Clean Harbors sent notice of the refiled Lopez lawsuit to National Union on March 23, 2007. However, National Union did not reopen the Lopez claim file until March 2008. During the intervening eleven months, National Union took no action on the Lopez claim.

In December 2007, Clean Harbors moved for summary judgment in the Lopez suit. On March 25, 2008, the court denied Clean Harbors' summary judgment motion. Clean Harbors' counsel, Myers, Miller & Krauskopf ("MMK"), which had been appointed by PEIC, then informed Clean Harbors that it was facing significant exposure to an adverse verdict in the Lopez case. Clean Harbors then retained new trial counsel, the firm of Shefsky & Froelich.

On November 12 and 13, Chief Judge Holderman held a settlement conference between Clean Harbors and Lopez in the Lopez suit. Representatives from National Union, PEIC and Clean Harbors' Environmental Impairment Liability ("EIL") insurer, Steadfast Insurance Company ("Steadfast"), were present. At the settlement conference, Clean Harbors and Lopez agreed to settle the claim for an amount exceeding Clean Harbors' coverage under the PEIC Policy. Steadfast agreed to fund the settlement. Clean Harbors and Steadfast entered into a "Settlement Funding Agreement" whereby each reserved all claims and defenses with regard to coverage under the Steadfast EIL policy.

The NU Policy provides, under Coverage A[1], excess insurance, for payment of:

> sums in excess of the total applicable limits of Scheduled
> Underlying Insurance that the insured becomes legally obligated to
> pay as damages provided the damages would be covered by the
> Scheduled Underlying Insurance, except for exhaustion of the total
> applicable limits of the Scheduled Underlying Insurance by the
> payment of Loss.

The PEIC Policy is listed as one of the Scheduled Underlying Insurance policies. The PEIC Policy provides coverage for:

> sums that the insured becomes legally obligated to pay as damages
> because of 'bodily injury' or 'property damage' to which this
> insurance applies.

The NU Policy defines the term Loss as:

> those sums actually paid as judgments and settlements and, . . . if
> provided by the Scheduled Underlying Insurance, expenses
> incurred to defend any Suit or to investigate any claim.

The NU Policy looks to the Scheduled Underlying Insurance for the definition of "Occurrence." The PEIC Policy defines Occurrence as:

> an accident, including continuous or repeated exposure to
> substantially the same general harmful condition.

The NU Policy contains a condition, which provides:

> If other valid and collectible insurance applies to damages that are
> also covered by this policy, this policy will apply excess of the
> Other Insurance.

---

[1] The NU Policy contains Coverage A and Coverage B. Since only Coverage A is relevant to this dispute, the Court will treat Coverage A as if it were the only part of the policy.

5

"Other Insurance" is defined as "a policy of insurance providing coverage for damages covered in whole or in part by this policy" but specifically excludes the Scheduled Underlying Insurance.

The NU Policy contains a further condition regarding Clean Harbors' duty to provide notice. The NU Policy provides:

> If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing . . . as soon as practicable and in accordance with the reporting provisions of the Scheduled Underlying Insurance.

The NU Policy incorporates an exclusion contained in the underlying PEIC Policy that bars coverage for bodily injury that is expected or intended by Clean Harbors. That exclusion states:

> This insurance does not apply to:
> a. Expected Or Intended Injury
> "Bodily injury" or "property damage" expected or intended from the standpoint of the Insured.

## CONCLUSIONS OF LAW

The Court has jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1367. The parties agree that Illinois law applies. Under Illinois law, in construing the language of an insurance policy, "a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Country Mutual Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill.2d 303, 311 (Ill. 2006). "An insurance policy must be construed as a whole, giving effect to every provision." *Id.*

An insured bears the burden of showing that a claim fails within a policy. *Farmers Auto. Ins. Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 896 (1st Dist. 2003).

An insurer has the burden of showing that any limitations or exclusions to a policy apply. *Id.*; *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 453-54 (2009) (*Addison*).

Adequate notice is a condition precedent to coverage; thus, the insured has the burden on that issue. *Household Intern., Inc. v. Liberty Mut. Ins. Co.*, 321 Ill .App. 3d 859, 874 (1st Dist. 2001); *see also West American Ins. Co. v. Yorkville Nat. Bank*, 238 Ill.2d 177, 939 N.E.2d 288, 293 (2010) (*Yorkville*) ("Insurance policy notice provisions impose valid prerequisites to insurance coverage."). Under Illinois law, "[a]n insured's breach of a notice clause in an insurance policy by failing to give reasonable notice will defeat the right of the insured to recover under the policy." *Yorkville*, 238 Ill.2d 177, 939 N.E.2d at 293. "Whether notice has been given within a reasonable time depends on the facts and circumstances of each case." *Id.*

## DECISION

### *Exhaustion of Other Insurance*

National Union argues that, as an excess insurer, it need not cover the Lopez loss because Clean Harbors has failed to exhaust all available primary insurance coverage. National Union argues that under the Illinois Supreme Court's ruling in *Kajima Construction Services v. St. Paul Marine and Fire Insurance*, 227 Ill.2d 102 (2007) (*Kajima*), an insured must exhaust all *available* primary insurance coverage before it may recover from an excess insurer. National Union asserts that Clean Harbors did not exhaust the limits of the EIL Policy issued by Steadfast, which, National Union asserts, provides primary coverage for the Lopez loss and that, therefore, National Union's excess coverage is not triggered.

Clean Harbors responds that this issue is properly resolved by application of the "Other Insurance" clause in the NU Policy. This "Other Insurance" clause is a limitation on coverage

7

and provides, "If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance." To limit National Union's coverage obligation based on this clause, Clean Harbors argues National Union must show that the Steadfast EIL Policy is "*valid*" and "*collectible*." Furthermore, Clean Harbors argues, because the "Other Insurance" clause is a limitation on coverage, National Union bears the burden of showing that it applies. National Union replies that its argument is not based on the "Other Insurance" clause but, rather, on the principle of "horizontal exhaustion" set out in *Kajima* that an insured must exhaust all *available* primary insurance before resorting to excess coverage.[2]

The horizontal exhaustion requirement discussed in *Kajima* was first set out by the Illinois Appellate Court in *United States Gypsum v. Admiral Insurance*, 268 Ill. App. 3d 598 (1994) (*Gypsum*). *See Kajima*, 227 Ill.2d at 106. In *Gypsum*, the court rejected the insured's argument that "the excess insurer must provide coverage once the underlying primary policy particular to the excess policy in question is exhausted regardless of whether the insurer has concurrent primary or excess insurance obligations." *Gypsum*, 268 Ill. App. 3d at 653. However, the *Gypsum* court first considered the "other insurance" clauses in the excess policies: "A plain reading of the 'other insurance' provision contained in the policies requires [the insured] to exhaust all triggered primary insurance before pursuing coverage under those excess policies." *Id.* at 654. Other decisions following *Gypsum*, and cited by *Kajima*, have likewise looked to the "other insurance" clauses in excess policies regarding the issue of horizontal

---

[2]By contrast, "vertical exhaustion" would allow an insured to recover both primary and excess coverage from a single insurer before seeking recovery from other primary insurers. *Kajima*, 227 Ill.2d at 106.

8

exhaustion. *See AAA Disposal Systems, Inc. v. Aetna Casualty & Surety Co.*, 355 Ill. App. 3d 275, 285 (2005); *Maremont Corp. v. Continental Casualty Co.*, 326 Ill. App. 3d 272, 279 (2001).

Thus, contrary to National Union's position, horizontal exhaustion, as a limitation on coverage by an excess insurer, is determined by application of the "other insurance" clause. In that regard, National Union has failed to meet its burden to prove that the Steadfast EIL Policy is "valid and collectible" as required by that clause and that the limitation of that clause is applicable. National Union insists that it must only show that the Steadfast EIL Policy is "available." However, National Union does not define the term "available insurance," nor does it explain how this term relates to the operative language in the NU Policy, which specifies that any other insurance must be "valid and collectible." Thus, National Union's claim that Clean Harbor's failure to exhaust the Steadfast EIL Policy excuses National Union from providing coverage is without support in the record.

National Union also argues that it is not obligated to pay the Lopez loss because Clean Harbors has not exhausted other primary CGL policies issued by PEIC covering periods from 1997 through 2000. National Union argues that Lopez's long-term exposure to toxic fumes at Clean Harbors' Chicago facility during the years before 2001 contributed to Lopez's illness and that, therefore, Lopez's injury qualifies as an occurrence under the earlier policies. However, at trial, National Union failed to produce any evidence showing that Lopez's injuries resulted from exposure prior to 2001. Indeed, the Court, during the trial, inquired several times what evidence National Union had to prove this claim; each time, National Union was unable to point to any specific, competent evidence establishing its theory.

At most, National Union can show that an occurrence prior to 2001 is a *possibility*. National Union's expert, Dr. Ernest Chiodo, testified that Lopez's injury could have been caused by long-term exposure; but he also admitted that injury could have been caused by acute exposure. Furthermore, Alan Kleinberger, National Union's Rule 30(b)(6) designee, conceded that National Union's theory that pre-2001 exposure caused the injury is speculative.

Moreover, National Union's allegations that Lopez suffered an injury that would qualify as an occurrence under policies in effect prior to 2001 lacks specific evidentiary support. National Union has not identified which toxic fumes it believes Lopez was exposed to prior to 2001, nor has it stated the dosage or duration of any such exposure. National Union has offered no medical evidence showing an injury to Lopez prior to 2001.

As explained above, National Union has the burden of showing that Clean Harbors was required to exhaust other insurance before seeking coverage under the NU Policy. Considering the evidence presented, National Union has not met this burden of showing that Lopez's injury was caused by an occurrence at a time when it would have been covered by PEIC policies in effect before 2001.

*Existence of a Loss*

National Union argues that Clean Harbors has failed to prove that it suffered a "Loss." National Union points out that the funds used to pay the Lopez Settlement came from Steadfast, not from Clean Harbors. Furthermore, National Union argues, under the terms of the Settlement Funding Agreement, Clean Harbors is not expressly required to repay Steadfast. Therefore, argues National Union, there has been no loss to Clean Harbors.

This argument is not persuasive. The Settlement Funding Agreement clearly provides that Steadfast would *advance* the funds to settle the Lopez suit. The term "advance" reasonably implies that repayment is expected. Indeed, the Settlement Funding Agreement specifically provides that Steadfast reserves the right to seek reimbursement or restitution from Clean Harbors. This was confirmed by the testimony of Mr. Pearson at trial. Pearson testified that the Settlement Funding Agreement obligates Clean Harbors to repay Steadfast and that Clean Harbors remains at risk to repay Steadfast. Thus, National Union's argument that the Settlement Funding Agreement does not obligate Clean Harbors to reimburse Steadfast is not supported by the facts. National Union does not contest that the Settlement Funding Agreement is a valid and binding agreement; its corporate representative, Alan Kleinberger, admitted this in his Rule 30(b)(6) deposition. That Steadfast advanced Clean Harbors the funds to cover the Lopez settlement does not prove that Clean Harbors did not suffer a loss.

*Adequate Notice*

National Union argues that Clean Harbors failed to provide proper notice to National Union of the Lopez suit and that, as a result, Clean Harbors may not recover under the NU Policy. Specifically, National Union argues that Clean Harbors' delay of 33 months before notifying National Union that the Lopez suit had been refiled was unreasonable.

The Illinois Supreme Court has indicated that the following factors should guide consideration of whether notice was given within a reasonable time: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's

diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer."
*Yorkville*, 238 Ill.2d 177, 939 N.E.2d at 293-94.

Here, the NU Policy provides that notice should be given "as soon as practicable." Illinois courts have interpreted this to mean "within a reasonable time." *Id*. Thus, the language of the NU Policy does not alone decisively favor either side.

National Union points out that Clean Harbors is a large corporation and has a dedicated risk management department that manages insurance claims and therefore is a sophisticated insured. Clearly, any unreasonable delay on the party of Clean Harbors cannot be excused by its lack of sophistication.

Clean Harbors cites facts in support of the third factor: Clean Harbors was not aware that the Lopez suit would trigger coverage under the NU Policy until after National Union had received notice of the refiled Lopez suit. Clean Harbors points to the fact that as of March 2007, the time when National Union admits that it received notice, Clean Harbors was not reasonably aware that its liability to the Lopez's would extend to its excess policy with National Union. Clean Harbors' knowledge of its limited potential exposure in the Lopez suit was based on the assessment of its attorneys, MMK, which advised Clean Harbor's as late as March 27, 2007, that the case was one of "non-liability." It was only after Judge Holderman denied Clean Harbors' motion for summary judgment, on March 25, 2008, in the *Lopez* case that Clean Harbors became aware that its liability might reach the NU Policy.

With respect to the fourth factor, National Union has offered no evidence that Clean Harbors was not diligent in ascertaining whether policy coverage was available. Finally, as to

factor five, the parties agree that National Union did not suffer any prejudice as a result of the delay in notice.

Therefore, considering all the evidence in light of the *Yorkville* factors set out above, Clean Harbors has met its burden of proof that it gave notice of the Lopez suit to National Union within a reasonable time, pursuant to the NU Policy.

*Whether the Injury was Reasonably Expected*

National Union argues that Clean Harbors reasonably expected the type of injuries allegedly sustained by Lopez to occur and that, therefore, no coverage is afforded under the NU Policy. As noted above, the NU Policy incorporates an exclusion contained in the underlying PEIC Policy that bars coverage for bodily injury that is expected or intended by Clean Harbors.

National Union argues that Clean Harbors knew that many of the chemicals it processed posed significant health risks and knew that there were dangerous emissions near the location where Lopez came to pick up dumpsters. National Union has the burden of showing that Clean Harbors reasonably expected the injury to occur. *See Addison*, 232 Ill.2d at 453-54 (insurer has burden of showing that exclusions apply).

National Union further argues that Clean Harbors was aware of the dangerous nature of several chemicals in its fuel-blending operation and, therefore, cannot "plead ignorance of the risk." National Union lists a number of chemicals present in the fuel-blending operation and their potential harmful effects. But evidence only that Clean Harbors was aware of the dangerous nature of these chemicals is not sufficient proof that Clean Harbors *expected* the Lopez injury to occur.

In this regard, National Union argues that the hazardous emissions from Building 43 significantly exceeded permit maximums. However, National Union has not met its burden of proving that the levels of hazardous emissions escaping from Building 43 *caused* Clean Harbors to expect an injury such as that sustained by Lopez. Specifically, National Union has failed to connect, by competent evidence, the Building 43 emissions with Lopez's injury; therefore, the extent to which the emissions from that building exceeded permit levels is simply not relevant to this defense under the policy.[3]

Finally, National Union argues that Lopez's injury was reasonably expected because Clean Harbors knew that the drums Lopez was hauling still contained up to one inch of hazardous waste residue and that this residue could evaporate, creating harmful fumes. National Union argues that the dumpsters containing the drums were not tarped (covered) and that Lopez would move the drums around to secure his load, thereby exposing himself to the harmful fumes. Clean Harbors responds by pointing to evidence that it was the company's custom and policy to tarp the dumpsters before they were hauled away. If Lopez was handling the drums in such a manner to somehow cause injury, Clean Harbors argues, that was the result of his own negligence, and Clean Harbors could not have reasonably expected the resulting injury.

Furthermore, Clean Harbors points to evidence that thousands of dumpsters hauling hundreds of thousands of drums were hauled away from the Chicago Facility without a similar

---

[3]Clean Harbors has requested that the Court strike the testimony of National Union's expert, Mr. Gilliam, who testified at trial regarding Clean Harbors' emissions. The Court will not strike Mr. Gilliam's testimony but, rather, will consider Clean Harbors' objections in determining the weight to attribute to that testimony. Mr. Gilliam's testimony was not persuasive on this issue.

injury occurring. Given this record, it cannot be said that Lopez's injury was something that Clean Harbors should have seen as almost certain to occur or that National Union has met its burden of proof as to this issue.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Clean Harbors on Count I of Clean Harbors' Third-Party Complaint. National Union is hereby ordered to indemnify Clean Harbors from and against the claims asserted by Lopez against Clean Harbors in the Lopez lawsuit.

Dated: February 24, 2011

JOHN W. DARRAH
United States District Court Judge