UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., et al., <br><br> Defendants. <br><br> CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., et al., <br><br> Counterclaim and Third-Party Plaintiffs, <br><br> v. <br><br> PACIFIC EMPLOYERS INSURANCE COMPANY, <br><br> Counterclaim Defendant, <br><br> and <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, <br><br> Third-Party Defendant. | No. 08 C 2180 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On April 16, 2008, Pacific Employers Insurance Company ("PEIC") brought suit against

Clean Harbors Environmental Services, Inc. and Clean Harbors, Inc. (collectively,

"Clean Harbors"), seeking a declaratory judgment that PEIC had no duty to indemnify

Clean Harbors for amounts recovered against Clean Harbors in a personal injury suit filed by

Eddie Lopez.[1] On September 26, 2008, Clean Harbors filed a counterclaim against PEIC and a third-party complaint against National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), seeking a judicial declaration that PEIC and National Union were obligated to defend and indemnify Clean Harbors against all claims made in the Lopez suit. On February 25, 2010, pursuant to a settlement agreement, Clean Harbors dismissed the counterclaim against PEIC. On August 23, 2010, a bench trial commenced as to the remaining claims between Clean Harbors and National Union. National Union has moved for judgment pursuant to Rule 52(c), which provides, "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).

National Union argues that it is entitled to judgment because Clean Harbors cannot show that it exhausted all underlying coverage, which is a condition precedent to coverage in Clean Harbors' policy with National Union ("the NU Policy"). Specifically, National Union argues that Clean Harbors' settlement with PEIC, which was for less than the full policy limit of Clean Harbors' policy with PEIC ("the PEIC Policy"), failed to exhaust the underlying coverage.

---

[1] Clean Harbors reached a settlement with Lopez. Another insurer of Clean Harbors, Steadfast Insurance Company, funded the Lopez settlement, pursuant to an agreement between Steadfast and Clean Harbors.

2

On the last page of the NU Policy, under the heading "Conditions," appears the following provision:

> R.   When damages are payable
>
> We will not make any payment under this policy unless and until:
>
> 1. under Coverage A, the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss.

The NU Policy defines "Loss" as:

> "those sums *actually paid as judgments and settlements* and, under Coverage A if provided by Scheduled Underlying Insurance, expenses incurred to defend any Suit or to investigate any claim." (Emphasis added).

Words in an insurance policy are ambiguous if they are susceptible to more than one reasonable interpretation. *Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8*, 314 F.3d 895, 902 (7th Cir. 2002) (*Pana*) (citing *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64 (1991)). In such cases, the policy is to be construed in favor of the insured and against the insurer. *Pana*, 314 F.3d at 902 (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90 (1992)). However, when the words of a policy are not ambiguous, "a court must afford them their plain, ordinary, and popular meaning." *Pana*, 314 F.3d at 902. "A court should consider the plain meaning of the policy language and should not search for a nonexistent ambiguity." *Id.* at 902-03.

National Union relies heavily on an earlier case from this court, *Great American Insurance Co. v. Bally Total Fitness*, 2010 WL 2542191 (N.D. Ill. June 22, 2010) (*Great American*). In *Great American*, the court held that a fourth-level excess insurance policy

3

unambiguously required the insured to collect the full limits of the underlying policies from the underlying insurers before recovering from the excess carrier. *Id.* at *5. National Union argues that the operative language in the policy at issue in *Great American* is substantially similar to language in the NU Policy. National Union cites the following clauses from the excess policy in *Great American*:

> "The insurance coverage afforded by the Policy shall apply . . . (2) only after *all Underlying Insurance has been exhausted by payment of the total underlying limit of insurance,* . . ."

> "In the event of exhaustion of all of the limits of insurance of the Underlying Insurance solely as a result of ***actual payment*** of loss or losses thereunder . . . ."

National Union Br. at 2 (citing *Great American*, 2010 WL 2542191, at *1) (emphasis and omissions by National Union).

The key distinction between the NU Policy and the *Great American* policy is that the NU Policy allows the insured to exhaust its policy through settlement. The NU Policy defines "Loss" as payments of judgments or settlements. Under Condition R of the NU Policy, the payment of a settlement – that is, PEIC's payment of its settlement with Clean Harbors – may exhaust the policy. Here, PEIC settled with Clean Harbors, thereby exhausting the PEIC policy and satisfying Condition R.

Furthermore, in *Trinity Homes v. Ohio Casualty Insurance Company*, --- F.3d ----, 2010 WL 5174967 (7th Cir. 2010) (*Trinity Homes*), the Seventh Circuit addressed precisely this issue in construing a policy that was very similar to the NU Policy. The policy in *Trinity Homes* provided, "If the limits of 'underlying insurance' have been exhausted by payment of claims, this policy will continue in force as 'underlying insurance.'" *Id.* at *3. The court below had held that

4

the limits of the underlying insurance had not been exhausted because the underlying insurers had settled with the insured for less than the full limits of their policies. *Id.* at *4. The Seventh Circuit reversed, finding that the policy was ambiguous in how the underlying (CGL) policy could be exhausted:

> Here, we disagree with the district court's conclusion that the umbrella policy clearly required exhaustion of the CGL limit by insurer payout alone. The umbrella policy is clear only insofar as it requires that the underlying CGL coverage be unavailable-either by exhaustion or denial of coverage-before [the umbrella] coverage is triggered. While the umbrella agreement does state that a CGL policy is exhausted when the policy limit has been completely expended, it does not clearly provide that the full limit must be paid out by the CGL insurer alone. As such, the policy is ambiguous and susceptible to the meaning put forth by [the insured]-that a CGL policy can be exhausted when an insured and a CGL insurer enter into a settlement agreement where the primary insurer will pay a large percentage of the total limit and the insured takes responsibility for the remainder.

*Id.*

*Trinity Homes* is controlling here. Like the policy in *Trinity Homes*, the NU Policy does not provide that the sole method of exhaustion is payment *by the underlying insurer*. Thus, it is ambiguous as to whether payments by Clean Harbors or others could contribute to the exhaustion of the underlying PEIC Policy.

## CONCLUSION

For the foregoing reasons, the Court finds that the NU Policy is ambiguous as to Condition R. National Union's Motion for Judgment Pursuant to Rule 52(c) is denied.

Dated: February 24, 2011

JOHN W. DARRAH
United States District Court Judge

5